CITY OF SHELBYVILLE *v*. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO.

[No. 17,832.   Filed October 13, 1896.]

MUNICIPAL CORPORATIONS.—*Powers Delegated to Cities by Legislature.*—*Limitation of Powers.*—*Lights at Street and Railroad Crossings.*—A statute empowering a city to require all railroad companies to maintain lights similar to those maintained by such city at streets crossed by their tracks, will authorize the passage of an ordinance providing for electric lights, where the city maintains electric lights, but not for lights of the "arc pattern."   *p. 73.*

SAME.—*Ordinance Requiring Railroad Companies to Maintain Lights at Streets Crossed by Its Tracks.* — An ordinance requiring railroad companies to maintain a light at all places where its tracks cross a street "on the same schedule plan adopted and used by said city," and imposing a fine for each night where there is a

failure to provide the specified light, is bad for its failure to fix definitely the times of lighting. *p. 74.*

SAME.—*Public Safety.—Lights at Railroad and Street Crossings.— Statute Construed.*— Section 5173, Burns' R. S. 1894 (Acts 1893, p. 302) authorizing cities to provide by ordinance for the security and safety of citizens and others from the running of trains through cities by requiring railroad companies to keep and maintain lights at points where the tracks cross a street, on all nights that the common council may direct, does not authorize the passage of an ordinance requiring railroad companies to maintain a light at every street and railroad crossing whether or not the security and safety of the citizens require it. *p. 74.*

SAME.—*Exercise of Power Conferred by Legislature.*—Where the power granted by the legislature to a city is general, and the manner of the exercise thereof left to the discretion of the city, an ordinance passed in pursuance thereof must be a reasonable exercise of the power granted. *p. 69.*

PRACTICE.—*City Ordinance.*—Overruling a demurrer to an answer setting up the invalidity of an ordinance is in effect holding the ordinance invalid. *p. 69.*

From the Shelby Circuit Court. *Affirmed.*

*D. L. Wilson,* for appellant.

*Elliott & Elliott* and *Adams & Carter,* for appellee.

HOWARD, J.—In 1893 the legislature of this State enacted the following statute:

"An act prescribing the duties and powers of common councils of cities in relation to requiring railroad companies to keep and maintain lights at street and railroad crossings in cities, and declaring an emergency.

Approved March 4, 1893.

"Section 1. Be it enacted by the General Assembly of the State of Indiana, that the common councils of all cities of this State, not working under a special charter granted by the legislature of the State of In-

diana, shall have the power to provide by ordinance or resolution for the security and safety of citizens and other persons from the running of trains through any city by requiring railroad companies running and operating a railroad through any city to keep and maintain lights on all nights that the common council may direct, at the points where the railroad tracks cross a street in any city, and may in such ordinance or resolution provide what kind of lights the railroad company shall maintain, and the manner of enforcing the compliance with the said resolution or ordinance by the railroad company, and for that purpose shall have power to pass and enforce a penal ordinance: *Provided*, That no city shall have authority under this act to pass any resolution or ordinance requiring any railroad company to maintain any different kinds of lights than that maintained by said city." Acts 1893, p. 302 (Burns' R. S. 1894, section 5173).

Under the provisions of this act, the appellant city passed an ordinance, of which we need set out only the title, preamble and first section, which are as follows:

"An ordinance requiring railroad companies to keep and maintain an electric light wherever a track of a railroad company crosses a public street, in the city of Shelbyville, Indiana.

"Whereas, it is necessary for the security and safety of citizens and other persons from the running of trains through the city of Shelbyville, by railroad companies running and operating a railroad through said city; that an electric light be kept and maintained as hereinafter directed, wherever the track of such railroad company crosses a public street in said city.

"Now, therefore,

"Section 1. Be it ordained by the common council of the city of Shelbyville, Indiana, that it shall here-

after be the duty of every railroad company, running and operating a railroad through said city, to keep and maintain an electric light, wherever a track of such railroad company crosses a public street in said city; all such electric lights shall be of the arc pattern and of the same candle-power as the arc lights used by said city for street lighting. The lighting of all said lights shall be on the same schedule plan adopted and used by said city for its street lighting.

"Every railroad company failing or neglecting to keep and maintain lights, as hereinbefore provided, shall be fined in any sum not exceeding $10.00 for each night wherein they neglect to provide such lights as herein specified."

In an action against the company for a violation of the ordinance, the court, by overruling appellant's demurrer to an answer by the company setting up the invalidity of the ordinance, in effect, held the ordinance to be void.

Counsel for appellee, in seeking to uphold this action of the court, contend that the statute above set out gave the city no power to pass the ordinance in question; and that the attempt to pass the ordinance was not a reasonable exercise of the power delegated by the legislature. There is but little difference between these contentions. If there was an unreasonable exercise of power on the part of the city, that is but saying that the city was without power to do what was attempted. In either case the ordinance would be without validity. If, however, as counsel for appellant contend, the ordinance was a valid exercise of the power granted, and the act granting the power was itself constitutional, then there can be no question as to the reasonableness of the ordinance. Any ordinance duly passed in pursuance of lawful power

delegated by the legislature to the city cannot be unreasonable. *A Coal-Float* v. *City of Jeffersonville*, 112 Ind. 15; *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426; *Steffy* v. *Town of Monroe City*, 135 Ind. 466; *Champer* v. *City of Greencastle*, 138 Ind. 339, 24 L. R. A. 768, 46 Am. St. Rep. 390.

In and of itself, the city had no power to pass the ordinance. As said in the last case above cited, "municipal corporations have such powers only as are conferred upon them by the act of the legislature creating them, and such incidental powers as are implied by their creation and as are essential for the accomplishment of the purposes of their creation and for their continued existence."

It is said in 1 Dill. Munic. Corp. (4th ed.), section 328: "Where the *legislature in terms confers upon a municipal corporation the power to pass ordinances of a specified and defined character*, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done cannot be set aside by the courts because they may deem it to be unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." And see, further, same authority, sections 319-330, and notes.

It therefore becomes necessary to inquire whether, in the case at bar, the act of the legislature gave to

the city power to pass the ordinance in question, in manner and form as it stands; and if the mode of the exercise of the power is not prescribed in the act, whether the mode pursued in the ordinance is reasonably calculated to carry out the legislative intent. The ultimate question is one of power, that is, whether the statute authorized the provisions found in the ordinance.

The act shows that the power granted was to be exercised "for the security and safety of citizens and other persons from the running of trains through any city." The preamble to the ordinance discloses the same intent; that is, that an electric light at railroad crossings "is necessary for the security and safety of citizens and other persons from the running of trains through the city of Shelbyville." The purpose, then, is not ordinary street lighting, or even track lighting, but "security and safety * * * from the running of trains." It is clear also that, under the guise of protecting citizens from passing trains at public crossings, the city could not enter into a general system of street lighting at every point where a railroad track crosses a public street. This would be an unreasonable exercise of the power granted by the legislature.

We are of opinion that the intent of the act is not substantially different from that of those statutes which provide for other safeguards of various kinds at railroad crossings.

It was said by this court, in Kistner, Exx., v. The City of Indianapolis, 100 Ind. 210, that: "In the forty-second clause of section 3106, R. S. 1881 (3541, Burns' R. S. 1894), it is enacted that the common council of the city shall have power to 'provide, by ordinance, for security of citizens and others from the running of trains through any city, and to require railroad corporations to observe the same.' We think, therefore,

that the power of the city of Indianapolis to have com-
pelled the Union Railway Company to erect, maintain
and use such proper and suitable safeguards, as
seemed best to the city, at the place where the seven
railroad tracks crossed Illinois street and its side-
walk, is clear and unquestionable." And the court ac-
cordingly held that at such a crossing the city had
undoubted power, under the clause of the statute
cited, to require the railroad company to erect safety
gates.   Under the same clause, also, a city may, by
ordinance, require flagmen at crossings where trains
pass or are liable to pass; and we have no question
that under the same general grant of power, as well
as under the statute before us, the city of Shelbyville
might have required suitable lights to be placed by
the railroad companies wherever, on account of the
passing of trains over the crossings, the public safety
should render it necessary.   See also *Toledo, etc., R. W.
Co.* v. *City of Jacksonville*, 67 Ill. 37, 16 Am. Rep. 611;
*Hayes* v. *Michigan, etc., R. R. Co.* 111 U. S. 228.

The power granted by the statute in this case is
general; the mode and manner of its exercise are not
given in the act, but are left to the discretion of the
city. We may, therefore, inquire whether there was a
reasonable exercise of the power granted; or whether,
in fact, power was given the city to do what it at-
tempted.   The act authorized the city to require rail-
road companies "to keep and maintain lights on all
nights that the common council may direct, at the
points where the railroad tracks cross a street in any
city."   The ordinance, assuming to proceed under this
grant, provides that every railroad company shall
maintain a light "wherever a track of such railroad
company crosses a public street in said city."   The
lights are ordered at every crossing, whether the se-
curity and safety of citizens requires it or not, and

City of Shelbyville v. The Cleveland, etc., Railway Company.

wherever any track crosses, even a switch track which may not be used once a week, and never in the night. This of itself indicates that it was the lighting of the streets, and not the safety of crossings that was aimed at in the ordinance.

We have no doubt, as indeed counsel for appellee admit, that, under the police power, the legislature may authorize cities to require railroad companies to light their crossings throughout the corporate limits. That is a matter for the judgment of the legislature. In this case, however, the law-making power has not seen fit to extend such a grant to cities, but has sought simply to give authority to protect citizens from passing trains. It was the plain intent to say definitely that the power heretofore given under which cities might require gates and flagmen at dangerous crossings, would also authorize the requirement of lights for the same purpose.

The statutory grant of power as to the kind of light was also general, limiting the lights only to such as should be maintained by the city. Under the authority so given, the ordinance provided for electric lights, which provision, we think, was authorized, in as much as electric lights were maintained by the city; but it was also provided in the ordinance that the lights should be of the "arc pattern," thus confining the company to a particular kind of electric lighting, and possibly to particular lamps in use in the city. Doubtless, under the statute, the ordinance could have required the light to be of a power sufficient to light the crossing, not to exceed that in use in the city; but there could be no authority further to interfere with the company's freedom of contract in providing such electric lights as it might prefer. The purpose of the statute, the protection of travelers over the crossings

from danger from running trains, must not be lost sight of.

It may also be questioned whether the ordinance is not objectionable from what it omits, no less than from what it expresses. It is not provided when the lamps shall be lighted, nor how long they shall continue to burn; only that the lighting "shall be on the same schedule plan adopted and used by said city;" and, in the penal clause, that a fine not exceeding $10.00 shall be imposed for "each night" when there is a failure to provide the specified light. We think the time or times of lighting should have been fixed definitely in the ordinance. Nor do we think there is anything to the contrary in the case of *Cincinnati, etc., R. R. Co.* v. *Sullivan, Treas.*, 32 Ohio St. 152, to which we are referred. There, as the court expressly found, the ordinance strictly followed and in no way transcended the powers conferred by the statute.

"What the legislature distinctly says may be done," to repeat the words of Judge Dillon, "cannot be set aside by the courts because they may deem it to be unreasonable or against sound policy. But where the power to legislate upon a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power."

We think that in this case the common council exceeded the power conferred by the statute, in requiring that the electric lights should be of a particular pattern; and that there was also an unreasonable exercise of the power granted, in practically providing for street lighting instead of lights for crossings over which trains run, or are liable to run, at night, and also in not providing definitely for the times during which the lamps should be lit.

The court, therefore, did not err in holding the ordinance invalid.

Judgment affirmed.

HACKNEY, J., took no part in this decision.