[Crim. No. 106.   Third Appellate District.—October 18, 1909.]

## In the Matter of the Petition of SAN CHUNG, for Writ of Habeas Corpus.

HABEAS CORPUS—CONVICTION UNDER CITY ORDINANCE—LAUNDRY FOR-
BIDDEN IN BUILDING USED FOR PUBLIC STORE.—The proprietor of
a laundry or wash-house, convicted of the violation of a city ordi-
nance forbidding the maintenance thereof in the city limits in any
building used in part for a public store, is not entitled to be dis-
charged upon *habeas corpus*.

ID.—CONSTITUTIONALITY OF ORDINANCE—PROVINCE OF COURT—DOUBT
INSUFFICIENT—CLEAR PROOF OF INVALIDITY REQUIRED.—It is not
sufficient that the court may entertain a doubt as to whether the
legislative body has exceeded its constitutional authority, but it
must clearly appear that some fundamental right of the individual
has been invaded and a personal privilege impaired or destroyed,
before an ordinance duly enacted can be declared invalid.

ID.—NATURE OF POLICE POWER—DISCRETION OF LEGISLATIVE BODY—
PRESUMPTION OF PROPER ACTION.—The police power vested in a
municipality is of extensive application, involving many variant
circumstances. It is incapable of exact definition, and depends
for its just and proper exercise so largely upon knowledge of local
conditions, that a very wide discretion must be conceded to the
legislative body, clothed as it is with the presumption that it will
be guided by a rational and conscientious regard for the rights
of the individual, as well as for the interests of the community.

ID.—DUTY OF COURTS IN CONSIDERING LOCAL POLICE POWER.—In de-
termining the validity of the ordinance, under the police power,
the courts must give due consideration to all the circumstances
of the particular city as far as disclosed, the objects sought to be
accomplished, and the necessity which exists for the measure. It is
only where it appears that the legislation has no proper relation
to the public welfare, and that under the guise of police regula-
tion, attempt is made to violate personal or property rights, that
the courts will not hesitate to overthrow the measure.

ID.—LOCAL RESTRICTIONS UPON PARTICULAR LAWFUL BUSINESS.—The
fact that an ordinance imposes restrictions upon the laundry busi-
ness which are not imposed on other lawful avocations, and that
the laundry business is a common, ordinary and useful avocation,
which should be hampered as little as possible, and that it is not
a nuisance *per se*, does not render local restrictions thereon invalid,
where such lawful business, when conducted in particular localities
specified, may become dangerous to the public safety or health.

ID.—ORDINANCE GENERAL AND NOT DISCRIMINATIVE.—The portion of the ordinance complained of by the petitioner for the writ of *habeas corpus* is general in its application, and does not discriminate against him as an individual or as a member of the Mongolian race. All persons, without regard to race or condition, are subject to its penalties if they violate its provisions.

ID.—NO PROHIBITION OF PROPER CALLING—REGULATION—PRESUMPTION. The ordinance discloses on its face no prohibition of the exercise of a proper calling, but only a regulation thereof, which this court must presume that the evidence before the city council demonstrated to be in furtherance of a beneficent design to contribute to the welfare and public health of the community.

ID.—PROVISION OF ORDINANCE INVOLVED NOT INVALID UPON ITS FACE.— It is only in cases where an ordinance appeared to be invalid upon its face that its invalidity has been necessarily declared. It is held that here it cannot be affirmed that the provision of the ordinance in controversy goes beyond the legitimate domain of the police power, or that the method adopted is unreasonable and unnecessarily oppressive.

PETITION for discharge from custody upon writ of *habeas corpus*.

The facts are stated in the opinion of the court.

Hinkson & Elliott, for Petitioner.

R. Platnauer, for Respondent.

BURNETT, J.—Petitioner is held in custody by virtue of a commitment issued out of the justice court of the city of Sacramento based upon a trial and conviction for the violation of section 3 of Ordinance No. 824 of said city, providing that "It shall be unlawful for any person, firm, corporation, or association of persons to establish, maintain, operate or carry on a public laundry or wash-house within the corporate limits of the city of Sacramento in any building, or any portion thereof, or in any annex or outhouse thereto, that shall be occupied or used either directly or indirectly as a public hall, store, restaurant, lodging-house, or saloon, or that is frequented or occupied by many persons, or that is occupied as a stopping place by transient guests, or that is frequented by persons likely to spread infectious, contagious or loathsome diseases, or that is occupied or used or

frequented directly or indirectly for any immoral or unlawful purpose."

The particular portion of said section of the ordinance violated by the petitioner is shown by the allegation of the complaint that: "The defendant did then and there willfully and unlawfully operate and carry on a public laundry in that certain building known as number 208 K street in said city of Sacramento then and there occupied and used in part as a public store," and it is therefore apparent that the validity of the ordinance only as it relates to this inhibition is involved in the proceeding here.

The grounds of attack similar to those usually urged against police and sanitary regulations of kindred character are that the provision is unreasonable, discriminatory, oppressive, in restraint of trade and generally violative of the constitutional right of petitioner to pursue a useful occupation without unlawful interference or unnecessary restraint.

The general principles involved in the determination of the controversy are well established, and, as far as necessary, may be stated as follows:

In the first place, it is not sufficient that the court may entertain a doubt as to whether the legislative body has exceeded the limits of its constitutional authority, but it must clearly appear that some fundamental right of the individual has been invaded and a personal privilege unfairly impaired or destroyed before an ordinance duly enacted can be declared invalid.

Again, what is known as the police power is one of very extensive application, involving many variant circumstances, and it is incapable of exact definition, and depends for its just and intelligent exercise so largely upon knowledge of local conditions, that a very wide discretion must be conceded to the legislative body, clothed with the presumption, as it is, that it will be guided by a rational and conscientious regard for the rights of the individual as well as for the interests of the community. In determining the validity of the ordinance the courts must give due consideration to all the circumstances of the particular city as far as disclosed, the objects sought to be accomplished, and the necessity which exists for the measure.

But it is equally true that while generally it is for the legislature to determine what laws and regulations are needed

11 Cal. App.—33

to protect the public health and to secure public safety and comfort, yet they must have some relation to these ends, and if under the guise of police regulation attempt is made to violate personal or property rights, the courts will not hesitate to overthrow such a measure.

In *Ex parte Jacobs,* 98 N. Y. 98, [50 Am. Rep. 636], it is said the "police power is very broad and comprehensive, and is exercised to promote the health, comfort, safety and welfare of society. . . . Under it the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other. . . . The limit of the power cannot be accurately defined, and the courts have not been able or willing definitely to circumscribe it. But the power, however broad and extensive, is not above the constitution. When it speaks, its voice must be heeded. It furnishes the supreme law, the guide for the conduct of legislators, judges and private persons, and so far as it imposes restraints, the police power must be exercised in subordination thereto."

In *Ex parte Sing Lee,* 96 Cal. 356, [31 Am. St. Rep. 218, 31 Pac. 246], it is declared: "It is provided by section 11 of article XI of the constitution of this state that 'any county, city, town, or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.' The power conferred upon cities and towns by the section just quoted is undoubtedly a very broad and comprehensive one, and would sustain the enactment of any ordinance having a reasonable tendency to promote the health, the comfort, safety and welfare of the inhabitants of the municipality and which would not be in conflict with some general law of the state."

In *Ex parte Whitwell,* 98 Cal. 78, [35 Am. St. Rep. 152, 32 Pac. 872], it is said: "But it is not true that when this power is exerted for the purpose of regulating a business or occupation, which in itself is recognized as innocent and useful to the community, the legislature is the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue such business or profession. . . . This principle is stated very forcibly in the case of *Mugler* v. *Kansas,* 123 U. S. 661, [8 Sup. Ct. 297], in the following language: 'The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the

substance of things whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution.' . . . This power of the courts, however, to declare invalid what they may deem an unreasonable legislative regulation of a business or occupation which the citizen has the constitutional right to follow, although undoubted, must from the nature of the power be exercised with the utmost caution, and only when it is clear that the ordinance or law so declared void passes entirely beyond the limits which bound the police power, and infringes upon rights secured by the fundamental law.''

In *Barber* v. *Connolly*, 113 U. S. 31, [5 Sup. Ct. 359], it is said by the supreme court of the United States, through Mr. Justice Field, that ''the fourteenth amendment in declaring that no state 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.

''But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations, to promote the health, peace, morals,

education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed not to impose unequal or unnecessary restrictions upon anyone, but to promote, with as little individual inconvenience as possible, the general good. Though in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions.''

In the light of these general principles can it be said that the particular portion of the ordinance violated by petitioner is beyond the legitimate scope of the police power, or that it unwarrantably disturbs petitioner in the enjoyment of his constitutional privileges?

It certainly cannot be maintained that it discriminates against him as an individual or as a member of the Mongolian race. All persons, without regard to race or condition, are subject to its penalties if they violate its provisions. There is nothing in the measure to show that it was designed to impose unequal or unnecessary restrictions upon any particular class engaged in the laundry business. We must judge of the purpose of the ordinance by what appears upon its face. Therefore, it must be held that it lays the same burdens upon all engaged in the same business under the same circumstances, and one of the main grounds of opposition to it is therefore seen to be without merit.

It does manifestly place restrictions upon the business of petitioner that are not imposed upon other occupations. And there is no question that his business is a common, ordinary and useful occupation that should be hampered as little as possible. It is true, as said by Judge Sawyer, in *Ex parte Tie Loy*, 26 Fed. 613, that ''The right to labor in this or any honest, necessary, and in itself harmless calling, where it can be the most conveniently, advantageously and profitably carried on without injury to others, is one of the highest privileges and immunities secured by the constitution to every American citizen and to every person residing within its protection.''

There is no contention here that the business is *prima facie* a nuisance, like a slaughter-house or a house for the storage

of gunpowder or dynamite, but the ordinance is sought to be justified upon sanitary considerations. It is insisted that it is not a harmless calling, that the city council determined upon proper evidence—and, indeed, that it is a matter of common knowledge—that the conditions under which laundries are operated are favorable for the propagation of disease, that the soiled garments received and handled in such places are liable to communicate deleterious germs to the circumambient atmosphere, giving rise to danger of infection to persons coming into close proximity to these surroundings. A due regard for the health of the community and a commendable desire to destroy or minimize as far as possible the sources of contagion have led, it is urged, to this regulation of a business from which the danger suggested is inseparable. If the danger really exists and is imminent, no one would have the hardihood to deny that it is not only the privilege, but the duty, of the council to obviate it if possible. Within the proper exercise of the police power the operation of public laundries within the city limits could be entirely prohibited if such a measure could reasonably be said to promote the public health. But here no prohibition is sought, but only a regulation which we must assume the evidence before the council demonstrated to be in furtherance of a beneficent design to contribute to the welfare of the community. Under such circumstances, if they exist, the abstract right of the individual to pursue any lawful occupation where it can be the most conveniently and advantageously carried on must yield to the superior right of the public to be protected from the menace of disease. Such legislation, indeed, is one of the beneficent products of modern advancement in sanitation. It is sanctioned by the more enlightened public sentiment as to the duty of guarding the public health, and it reflects the principle of sound, scientific hygiene. It is on the same footing as legislation requiring streets to be kept clean, garbage properly removed and air pollutions of all kinds prevented, whether they arise from smoke, street dust, noxious gases or other sources. Formerly such legislation would have been regarded as an unwarranted encroachment upon the rights of the individual, but in view of the progress of the medical profession, the better understanding of the nature of disease and its transmission, and the broader conception of the duty of the municipality in regard to the preservation and protec-

tion of the public health characteristic of the present age, it seems upon its face to embody a sensible and reasonable restriction, bearing a direct and efficacious relation to the accomplishment of a legitimate purpose of police and sanitary legislation. At least, in the absence of any evidence to that effect, we cannot say that the public health is not thereby promoted or that the method adopted is unreasonable and unnecessarily oppressive. The fact is that as far as the convenience of the petitioner is concerned, we have no right to assume that he may not secure in the same neighborhood a building for the operation of his business free from the statutory objections, having the same advantages and at practically the same expense to himself. But be that as it may, under the showing made it cannot be held that he has any just cause for complaint.

We find that similar questions have been considered in various decisions of the higher courts, to some of which we may with propriety refer.

In *Barber* v. *Connolly,* 113 U. S. 31, [5 Sup. Ct. 359], it appears that the board of supervisors of the city and county of San Francisco passed an ordinance reciting that the indiscriminate establishment of public laundries and wash-houses, where clothes and other articles were cleansed for hire, endangered the public health and the public safety, etc., and ordaining, among other things, that ''no person owning or employed in a public laundry or a public wash-house within the prescribed limits shall wash or iron clothes between the hours of 10 in the evening and 6 in the morning, or upon any portion of Sunday.'' In holding that this provision was not in contravention of the first section of the fourteenth amendment to the constitution of the United States, it was declared that ''The provision is purely a police regulation within the competency of any municipality possessed of the ordinary powers belonging to such bodies. It may be a necessary measure of precaution in a city composed largely of wooden buildings, like San Francisco, that occupations in which fires are constantly required should cease after certain hours at night until the following morning; and of the necessity of such regulations the municipal bodies are the exclusive judges; at least, any correction of their action in such matters can come only from state legislation or state tribunals. . . . There is no invidious discrimination against anyone within the pre-

scribed limits by such regulations. There is none in the regulation under consideration. All persons engaged in the same business within the prescribed limits are treated alike; are subject to the same restrictions, and are entitled to the same privileges under similar conditions.''

The same ordinance was before the said court in *Soon Hing* v. *Crowley,* 113 U. S. 703, [5 Sup. Ct. 730], and it is there declared that ''However broad the right of everyone to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for the common welfare. All sorts of restrictions are imposed upon the actions of men, notwithstanding the liberty that is guaranteed to each. It is liberty regulated by just and impartial laws. Parties, for example, are free to make any contracts they choose for a lawful purpose, but society says what contracts shall be in writing and what may be verbally made, and on what days they may be executed and how long they may be enforced if their terms are not complied with. So, too, with the hours of labor. On few subjects has there been more regulation. How many hours shall constitute a day's work in the absence of contract, at what time shops in our cities shall close at night, are constant subjects of legislation. Laws setting aside Sunday as a day of rest are upheld not from any right of the government to legislate for the promotion of religious observances, but from the right to protect all persons from the physical and moral detriment which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the states.''

In the *Matter of Yick Wo,* 68 Cal. 299, [58 Am. Rep. 12, 9 Pac. 142], it is said: ''Clothes-washing is certainly not opposed to good morals, or subversive of public order or decency, but when conducted in given localities, it may be highly dangerous to the public safety. Of this fact the supervisors are made the judges, and having taken action in the premises, we do not find that they have prohibited the establishment of laundries, but that they have as they might well do *regulated* the places at which they should be established and the character of the buildings in which they are to be maintained.''

The regulation therein considered was much more drastic than the one involved here, but it was held to be valid as within the police power of the municipality.

In *Ex parte Lacey*, 108 Cal. 326, [49 Am. St. Rep. 93, 41 Pac. 411], is an interesting discussion of the principles involved herein.

In Dillon on Municipal Corporations, section 369, it is said: "Our municipal corporations are usually invested *with express power to preserve the health and safety of the inhabitants."* Here, as we have seen, our constitution, article XI, section 11, expressly confers the power upon the municipalities, and in addition thereto we find in the charter of the city of Sacramento authority granted to the board of trustees, article II, section 25, subdivision 9 (Stats. 1893, p. 552), "to regulate the maintenance of acid works, slaughter-houses, wash-houses, laundries, tanneries, offensive trades and all other manufactories, works and business of every description that may endanger the public safety, health or comfort and to restrict the prosecution thereof to such fixed limits as may seem proper, or exclude such works and business from the city."

Dillon proceeds to say, in section 379, that "Much must necessarily be left to the discretion of the municipal authorities and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive or unwarrantably *invade* private rights or clearly transcend the powers granted to them. . . . It is not unusual to invest the municipal council with *special authority* in respect of particular avocations, trades, acts, omissions and structures, with a view to conserve the public health and safety, of which many examples have been given in the notes to this chapter. The terms in which such authority is conferred measure its scope, but in view of the end for which it is given, it is not subjected to a hostile or even a narrow construction."

The principal cases upon which petitioner relies to support his contention are *Ex parte Jacobs*, 98 N. Y. 98, [50 Am. Rep. 636], *Ex parte Sing Lee*, 96 Cal. 356, [31 Am. St. Rep. 218, 31 Pac. 246], *Ex parte Whitwell*, 98 Cal. 73, [35 Am. St. Rep. 152, 32 Pac. 870], *The Stockton Laundry Case*, 26 Fed. 611, and *In re Sam Kee*, 31 Fed. 680.

The ordinance condemned in the Jacobs case made it a misdemeanor to manufacture cigars in cities of more than five

hundred thousand inhabitants, in any tenement house occupied by more than three families, except on the first floor of houses on which there is a store for the sale of cigars and tobacco. It was held to be unconstitutional because it arbitrarily interfered with personal liberty and private property without due process of law. The only attempted justification for it, that it was a health law, was declared to be utterly without support. The court said: "It has never been said, so far as we can learn, and it was not affirmed even in the argument before us, that its preparation and manufacture into cigars were dangerous to the public health. We are not aware and are not able to learn that tobacco is even injurious to the health of those who deal in it, or are engaged in its production or manufacture. We certainly know enough about it to be sure that its manipulation in one room can produce no harm to the health of the occupants of other rooms in the same house. . . . It is plain that this is not a health law and that it has no relation whatever to the public health."

The decision in *Ex parte Sing Lee* was put upon a similar ground. The ordinance there "prohibited the carrying on of a public laundry within the corporate limits of the town except in certain specified blocks thereof, without a written permit from the board of trustees, and provided that no permit should be granted unless the applicant should first obtain the written consent of a majority of the real property owners within the block in which the business was to be carried on and also of the four blocks immediately surrounding such block." This was held to be unreasonable and an unauthorized interference with the inalienable right to engage in a lawful occupation, the court saying that the ordinance had "no tendency to promote the public health, or in any way to secure the public comfort or safety. The sections of the ordinance above quoted bear no kind of relation to such objects, and do not attempt to regulate the business mentioned with the view of accomplishing such ends, but they commit the right to carry on such business at all, in all but two blocks of the town, to the unrestricted will and caprice of a majority of the real property owners within the block upon which it is proposed to establish such laundry and of the four blocks immediately surrounding such block."

In *Ex parte Whitwell*, 98 Cal. 73, [35 Am. St. Rep. 152, 32 Pac. 870], the ordinance required that the building or

buildings designed and used as a hospital or asylum for the care and treatment of the insane, persons of unsound mind, inebriates or those suffering from any mental or nervous diseases, should be fireproof, by reason of being constructed of brick and iron or stone and iron, and not more than two stories in height, and that the same and the land used in connection therewith, or such part of said land as any of the patients are to have access to, should be surrounded by a brick or stone wall, not less than eighteen inches in thickness and not less than twelve feet in height, and in which wall there is but one opening closed by a solid iron door so constructed and fitted into said wall as that the same may be securely fastened by a combination lock, and said premises not to be within four hundred yards from any dwelling-house or schoolhouse.

There were other equally searching provisions, and it was rightly held that the ordinance was unreasonable and not a proper exercise of the police power, and therefore void. It was apparent from the face of the ordinance that it was an arbitrary and unwarrantable interference with a legitimate business recognized as innocent and useful to the community, and that it did not bear any relation to the lawful purpose of police or sanitary regulations.

In the Tie Loy or Stockton Laundry case the ordinance, as said by Judge Sawyer, absolutely and unconditionally forbade "the keeping of a laundry for washing clothes for hire at any point within the inhabited and even within the habitable part of the city of Stockton; the remainder of the city being in the uninhabitable marshes and sloughs. The isolated position of the laundry, the character of the structure, and the perfection or imperfection of the appliances for rendering the operation safe and free from unwholesomeness to the senses are not factors to be considered under the ordinance. All must go, safe or unsafe, healthy or unhealthy, offensive or not offensive."

There probably might be conditions under which it would be a proper exercise of the police power to prohibit altogether a public laundry within the corporate limits of a municipality, but assuredly the burden of making such a showing would be cast upon the one asserting its rightful exercise.

There may be more question about the decision in the Sam Kee case, *supra,* but there the business within certain limits

of the city of Napa was absolutely prohibited, and the ordinance appearing on its face to be unreasonable and oppressive, in the absence of any showing before the court to justify such an encroachment upon individual rights, it was justly deemed to be invalid. In the foregoing cases an inspection of the ordinance revealed its fatal infirmity, but here it cannot be affirmed that the provision in controversy goes beyond the legitimate domain of the police power.

The writ is therefore denied and the petitioner remanded.

Hart, J., and Chipman, P. J., concurred.