# CITY OF ST. PAUL v. ST. PAUL CITY RAILWAY COMPANY.[1]

## May 5, 1911.

## Nos. 16,818—(29).

**Authority of city council.**

Under the provisions of section 61, City Charter, which is a grant of power to make all regulations which may be necessary or expedient for the preservation of health and the suppression of disease, the common council of the city of St. Paul have authority to take such reasonable measures as may be necessary to regulate the raising of dust by the operation of street cars in the city streets.

**Same.**

The common council is not limited, in reference to dust raised in the operation of appellant's cars, to the provisions of Ordinance No. 1227, which provides for the cleaning of that part of the streets occupied by its tracks.

**Same — requiring defendant to sprinkle its tracks.**

It is within the power of the common council to require the operators of street cars to take reasonable measures to protect the passengers from dust raised by the cars, without regard to the benefits which may or may not result to the residents along the streets.

**Same — defenses to regulations.**

It is no defense to the enforcement of reasonable regulations by the use of water to prevent street cars from raising dust that there might be created a monopoly as to water, that oil would be a more efficient agent, or that the installation and maintenance of an adequate sprinkling system would be expensive.

**Ordinance not unreasonable.**

An ordinance providing "that each and every person, company, or corporation, operating any street car line or lines within the city of St. Paul, Minnesota, shall water their tracks so as to effectually keep the dust laid on the same while the cars are in operation: Provided, however, such watering shall not be done when the temperature is at or below the freezing point"— is not unreasonable, in that it requires the tracks to be watered during the winter season, when the temperature is above the freezing point.

[1] Reported in 130 N. W. 1108.

Defendant was cited to appear before the municipal court of St. Paul for having operated its street cars on Front street on May 26, 1910, in violation of city ordinance No. 2863. It appeared and pleaded not guilty. The matter was heard before Finehout, J., who found defendant guilty. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*N. M. Thygeson*, for appellant.

*J. C. Michael* and *O. H. O'Neill*, for respondent.

LEWIS, J.

On October 28, 1909, the common council of the city of St. Paul passed the following ordinance: "That each and every person, company or corporation, operating any street car line or lines within the city of St. Paul, Minnesota, shall water their tracks so as to effectually keep the dust laid on the same while cars are in operation: Provided, however, such watering shall not be done when the temperature is at or below the freezing point." The penalty for each offense is a fine of $100, or imprisonment for thirty days.

Appellant company was convicted of violating this ordinance, upon a complaint which charged that it failed and neglected to water its tracks upon Front street, between North Grotto street and North Chatsworth street, on May 26, 1910, the temperature not then being below the freezing point; appellant's cars then and there causing large volumes of dust to arise from its tracks, and the watering thereof being necessary to effectively keep the dust laid thereon. The appeal calls for a consideration of the legislative power vested in the common council and the reasonableness of the ordinance.

1. Appellant acquired the right to occupy the streets of the city in 1889 under Ordinance No. 1227, which among other things provided:

"Sec. 9. The St. Paul City Railway Company shall at all times keep so much of the streets occupied by said lines of railway as may lie between the rails of each track, and between the lines of double track, and for a space of two feet outside of the track or tracks cleaned and in good repair, and shall cause the snow to be removed so as to afford a safe and unobstructed passageway for

sleighs and wagons within twenty-four hours of the snowfall in each instance, and the repairs and the removal of the snow shall be done to the satisfaction of the common council, or such person or persons as may have the supervision of the streets of the city of St. Paul, and at the cost and expense of said company, and in case of any failure to comply with the above provisions, the city engineer shall cause such snow to be removed and the track kept in repair as aforesaid, and the expense thereof shall be charged to and collected from said St. Paul City Railway Company."

If we understand appellant's argument, it is that Ordinance No. 1227 is in the nature of a contract which requires the company to *clean* that portion of the streets occupied by its tracks, but not to sprinkle them; that the contract to clean is only in conjunction with the city, where the entire street or streets are cleaned, from curb to curb; that there are twenty-one miles of streets within the city, occupied by appellant's tracks, which the city does not attempt to clean, including Front street, and therefore there was no authority in the council to require the company to sprinkle the portion of the streets occupied by it in such districts. The evidence was conclusive that the only effective and practical way to rid the paved streets of dust in the congested parts of the city was by flushing them completely. It is also quite apparent that it would be a heavy burden on the city and of doubtful practicability to flush or wash those streets, paved or unpaved, which are in the outlying districts. It does not follow that, because it may be deemed impracticable to *clean* all of the streets occupied by appellant's tracks, the city does not have the power to take reasonable steps to prevent dust from being raised by the operation of appellant's cars in the sparsely settled or nonresident districts.

Ordinance No. 1227 was not intended to embrace the entire subject, and this leads to an inquiry whether the common council was vested with authority from some other source to legislate upon the subject. Under the grant of power in the city charter in force October 28, 1909, the common council was vested with authority (section 61) "to prevent, prohibit, remove and abate any nuisance injurious to the public health or safety, and to do all acts and make

all regulations which may be necessary or expedient for the preservation of health and the suppression of disease.   *   *   * "

According to the undisputed evidence, and it is a matter of common knowledge, the dust and filth which accumulates on the streets is laden with disease germs, and, when caused to float through the air, is a menace to the public health. The extent of the danger varies according to the density of the population and amount of traffic. It is less in the outlying districts than in the business centers; but reasonable regulations with respect to it are as clearly within the legislative power of the city council as the regulation of the·smoke nuisance (City of St. Paul v. Haugbro, 93 Minn. 59, 100 N. W. 470, 66 L.R.A. 441, 106 Am. St. 427), dealers in meats (State v. McMahon, 62 Minn. 110, 64 N. W. 92), and the control of scavengers (State v. McMahon, 69 Minn. 265, 72 N. W. 79, 38 L.R.A. 675).

2. Is the ordinance reasonable? It requires that all street car tracks be watered, so as to keep the dust laid on the same while cars are in operation. This means all of the tracks of appellant company, wherever situated, within the corporate limits; the uninhabited portion, as well as the business centers and the residence districts. The ordinance makes no exception as to time. The tracks must be kept watered effectively day and night, provided cars are operated and their operation raises dust. No account is taken of .the seasons. It covers summer and winter, with the single exception that it shall not be required when the temperature is at or below the freezing point.

Several objections urged by appellant are untenable, and need not be noticed at length. That the water board has a monopoly of the water supply, and would establish exorbitant rates if appellant were forced to establish a car sprinkling system, does not appear from the record. That the installation and maintenance of such a system would be expensive is in itself no defense, since it does not appear that it would be so expensive as to be prohibitive. That the use of oil would be more lasting and effective may be, and probably is, true. But there is nothing in the record to indicate that the council designated water arbitrarily. If experience has shown that

oil is a more efficient and more economical agent with which to accomplish the desired result, it is to be supposed that reasonable men will consent to its substitution for water under proper regula-- tions. However that may be, the ordinance cannot be condemned because the ordinary method of laying dust with water was specified instead of oil.

It may be profitable to refer to some of the cases on this subject. In State v. Canal, 50 La. An. 1189, 24 South. 265, 56 L.R.A. 287, decided in 1898, the ordinance was similar to this—with the exception of the proviso. Some of the reasons now advanced why the ordinance cannot reasonably be complied with were not discussed in the opinion. The principal objections submitted and considered were that the ordinance was unreasonable, because it discriminated in favor of other vehicles responsible for bringing the dust upon the streets; that it was unequal, and not uniform, transferred a public burden to a private person, resulted in taking private property without just compensation and without due process of law, and was an impairment of its contract rights under the federal constitution. As we understand the record, the ordinance was violated by a failure to water the tracks in the populous part of the city of New Orleans, and the question of unnecessary hardship involved by requiring all tracks to be watered so as to keep the dust laid, wherever situated, regardless of time, season, or amount of traffic, or number of residents along the streets, was not considered.

The decision in City v. Mayor of Savannah, 77 Ga. 731, 4 Am. St. 106, was rendered in 1886, before electric railways were installed, and the report of the case is meager. The question of its unreasonableness, if enforced in the uninhabited portion of the city, was not discussed, and its impartiality was sustained, upon the ground that it was for the benefit of the occupants of houses along the street where the cars were operated. Of course, the difficulty to be encountered in the winter was not involved. We consider the case authority, however, upon the general proposition that the subject is within the general police powers conferred on municipalities to preserve the public health and comfort. Dillon, Municipal Cor-

porations (4th Ed.) § 721.    See also State v. Milwaukee, 144 Wis. 386, 129 N. W. 623.

The only other case involving this particular subject, which we have discovered, is the following:   In 1896 the district court of Delaware County, Pennsylvania, held valid an ordinance of the city of Chester requiring street railways to sprinkle that portion of the street occupied by them.   Chester v. Chester, 5 Pa. Dist. R. 609. The decision was reversed in the superior court, and is reported in 40 Weekly Notes Cas. (Pa.) 183.   The ordinance required every railway company occupying any street to cause the same to be sprinkled for the distance of three feet six inches each way from the center of the tracks, so that no dust would be raised by a passing car.   It was held to be unreasonable, on the ground that no distinction was made between summer and winter, and that sprinkling a seven-foot strip in the winter would amount to a nuisance.

An ordinance may be valid when applied to conditions existing in the thickly settled part of the city, but invalid with reference to the suburban or semi-suburban districts.   Evison v. Chicago, St. P., M. & O. Ry. Co., 45 Minn. 370, 48 N. W. 6, 11 L.R.A. 434, with reference to the speed of trains; Corrigan v. Gage, 68 Mo. 541, where it was held that the ordinance requiring the construction of a sidewalk in an uninhabited portion of the city was oppressive and unnecessary; and City v. Cleveland, 146 Ind. 66, 44 N. E. 929; Cleveland v. City, 147 Ind. 277, 46 N. E. 579; 37 L.R.A. 175, 62 Am. St. 418, with respect to maintaining lights at all hours at crossings, without regard to the necessity thereof for the security of the public.

Front street runs from Como avenue to Chatsworth street, and is about three and one-half miles from the business center of the city.   There are no houses on one side and but few on the other side of the street.   The city had not taken any steps to sprinkle or keep the dust laid in the streets in that part of the city, and it was shown that the dust raised by the car entered the interior of the car to the great discomfort of the passengers.

Although similar regulations have generally been sustained, on the ground that the dust raised by the cars was a menace to resi-

dents and travelers along the streets, we are of the opinion that the ordinance is not unreasonable in its application to the nonresident districts. The health and comfort of those riding in the cars is quite as important as of those who reside or travel in the vicinity. The installation and maintenance of apparatus to sprinkle the tracks in the uninhabited portions of the city may seem unnecessary and burdensome, especially where travel is light; but it has not been made to appear that the requirement cannot be complied with in those localities as effectively for the benefit of the passengers as in the residence streets. The extra expense for water and the distance to be covered may entail some extra expense; but it has not been made to appear that the burden will be unreasonable.

A majority of the court are of the opinion that, under the proviso contained in section 1, directing that "such watering shall not be done when the temperature is at or below the freezing point," the company are not required to put water on the streets during those periods when, because of the prevailing or reasonably expected temperature, water put on the streets would be likely to freeze before it was absorbed or evaporated, and that the ordinance can therefore be complied with by the company; that the ordinance is intended to require a practical operation of sprinkling by water that will not result in the freezing of the wet street surface, and the company cannot be held to have violated the ordinance unless it fails to water the streets during those periods when it can reasonably be anticipated that sprinkling with water is reasonably and clearly practicable, without a resulting frozen condition of the street surfaces, having reference to the known usual range of temperature in this locality; that the company cannot complain of the uncertainty as to freezing, because it is given a corresponding latitude in determining whether water should be put upon the streets; and that, if the city desires to remove such latitude in the obligation placed on the company, it must do so by making the requirement of the ordinance more definite.

Affirmed.