[Civ. No. 1385.    Third Appellate District.—September 27, 1915.]

## PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Petitioner, v. THE POLICE COURT OF THE CITY OF SACRAMENTO et al., Respondents.

MUNICIPAL ORDINANCE—STREET SPRINKLING BY RAILROAD CORPORATIONS —VALID EXERCISE OF POLICE POWER.—An ordinance of the city of Sacramento requiring every person, firm, or corporation, owning, controlling, or operating any street railroad, suburban railroad, or interurban railroad, upon and along any of the streets of the city, to sprinkle with water the surface of the street occupied by such railroad between the rails and the tracks and for a sufficient distance beyond the outermost rails thereof so as to effectually lay the dust and prevent the same from arising when the cars are in operation, during the months of June, July, August, September, and October of each year, and without cost to the city, is a valid exercise of the police power of the municipality.

ID.—POLICE POWER—NATURE AND EXTENT.—The constitutional grant of police power is only limited to regulations not in conflict with general laws, and it embraces the right to regulate any class of business the operation of which, unless regulated, may, in the judgment of the appropriate local authority, interfere with the rights of others, and is not confined to the regulation of only such interferences with the public welfare and comfort as come strictly within the common-law definition of a "nuisance."

ID.—STREET SPRINKLING—POLICE POWER.—The sprinkling of streets so as to effectually lay the dust is demanded by considerations of health and comfort, and it is a just and equitable regulation and discrimination to impose the burden of such remedial measure upon the agency producing the inconvenience, discomfort and menace to the health of the community.

APPLICATION originally made to the District Court of Appeal for the Third Appellate District for a Writ of Certiorari to review and annul certain judgments rendered in a criminal action for the alleged violation of a municipal ordinance.

The facts are stated in the opinion of the court.

Wm. B. Bosley, Thos. J. Straub, and L. T. Hatfield, for Petitioner.

Archibald Yell, and Hugh B. Bradford, for Respondents.

BURNETT, J.—The application is for a writ of *certiorari* to review and annul the judgments entered in said courts, rendered in a criminal action prosecuted by the people against said petitioner, for the violation of a certain ordinance of said city of Sacramento.

The petition filed herein shows that petitioner· is a public utility corporation and owns and operates a street railway system in the city of Sacramento consisting of approximately sixteen miles of double track, and eight miles of single track; that, during the years 1908 to 1912, inclusive, petitioner, under contracts therefor with the city of Sacramento, sprinkled the streets occupied by its tracks and received from said city as compensation therefor under said contracts the sum of $9,527.00, which sum was raised therefor by said city through the exercise of its regular taxing powers.   The city commission of the city of Sacramento passed the ordinance in question, designed to compel the petitioner, at its own expense, during certain specified months of each year, to sprinkle a portion of said streets.   Believing that said ordinance was void and of no effect, petitioner failed and refused to comply with any of the provisions thereof, whereupon an action was commenced against petitioner in the police court of said city and, notwithstanding petitioner's objections thereto that said ordinance was void and the court without jurisdiction thereunder, petitioner was prosecuted for and convicted of violating the same and fined four hundred dollars therefor, which judgment was afterwards affirmed by the superior court.

Said ordinance is as follows:

"Section 1.   Every person, firm, or corporation owning, controlling or operating any street railroad, suburban railroad, or interurban railroad upon and along any of the streets of the city of Sacramento shall, without cost to the city during the months of June, July, August, September and October of each year, and at such other times as may be necessary to keep the dust laid, sprinkle with water the surface of the street, occupied by such railroad, between the rails and the tracks and for a sufficient distance beyond the outermost rails thereof, so as to effectually lay the dust and prevent the same from arising when the cars are in operation.

"Section 2. The sprinkling required by the provisions of section 1 of this ordinance shall be done under the general

supervision of the superintendent of streets, and such work shall be performed only between the hours of nine o'clock P. M. and seven o'clock A. M. unless otherwise directed by said superintendent of streets. The water used for sprinkling said streets may be taken from the city water system without charge; provided, that great care must be exercised in coupling hose to the hydrants so that injury to the same may be avoided; and provided also, that when a fire alarm is sounded all hydrants must be instantly closed and must not be reopened until the signal indicating that the fire has been extinguished is given.

"Section 3. In the sprinkling of the streets, as required by this ordinance, oil macadam streets and streets paved with asphalt shall be lightly sprinkled, but all other streets shall be thoroughly wet.

"Section 4. A violation of any of the provisions of this ordinance shall be and constitute a misdemeanor and shall be punishable by a fine of not to exceed five hundred dollars, or by imprisonment in the city jail for not to exceed six months, and for each day any such person, firm or corporation shall fail, refuse or neglect to sprinkle said streets, as in this ordinance provided, such person, firm or corporation must pay to the city of Sacramento as liquidated damages the sum of two dollars for each mile of street so left unsprinkled.

"Section 5. This is an ordinance for the immediate preservation of the public health, and is hereby declared to be an urgency measure and shall be in full force and effect from and after its passage."

The charging part of the complaint filed in said police court against petitioner was as follows:

"That at all the times in this complaint mentioned, the said defendant corporation owned, operated and controlled a street railroad upon and along and occupying certain streets of the city of Sacramento; that on the — day of July, 1913, and within the limits of the city of Sacramento, in the said state of California, the said defendant, Pacific Gas and Electric Company, a corporation as aforesaid, did then and there, before the filing of this complaint, and within one year prior thereto, willfully, and unlawfully fail, neglect, and refuse to sprinkle with water the surface of the street or streets occupied by such corporation, at such times as were necessary to keep the dust laid, between the rails and tracks and for

a sufficient distance beyond the outermost rails thereof, so as to effectually lay the dust and prevent the same from arising when the cars owned, operated, and controlled by said defendant corporation upon and over the said street railroad of the said defendant corporation aforesaid, were in operation: which said failure, neglect and refusal of the said defendant corporation aforesaid was and is contrary to and in violation of lawful ordinance of the city of Sacramento, entitled: 'Ordinance Number 95, Third Series, An Ordinance providing for the sprinkling of streets occupied by street railways, suburban railways or interurban railways, within the city of Sacramento,' etc., passed by the city commission of said city of Sacramento on the 19th day of June, A. D. 1913; and contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the people of the state of California.''

There is much discussion in the briefs as to whether the writ of *certiorari* will lie in such case as this where a trial has been had in an inferior court, an appeal regularly taken to the superior court, and the judgment of the inferior court has been affirmed. Some doubt as to this is created by the decisions. For the purpose of this determination, however, we may assume that an application for the writ may be entertained.

The remaining question is whether the ordinance must be held to be inoperative and void—in other words, beyond the authority of the legislative council to enact. There is no controversy as to the regularity of any of the proceedings, but the sole contention is that petitioner committed no offense, by virtue of the fact that said ordinance, being invalid, could create or constitute the basis for no offense. We may observe, also, that the pronouncement of petitioner is not aided by any extraneous evidence as to the reasonableness of said ordinance, but the justification of its position is sought in the plain significance of said provisions themselves in connection with the terms of petitioner's franchise. Respondent's contention is grounded in the proposition that said enactment is within the legal exercise of the police power of the municipality. Correlated to this is the affirmation by respondents that, in order to prevail, the burden is upon petitioner to show that said ordinance is invalid, all the presumptions being in favor of its validity.

For a discussion of the nature and extent of the police authority of municipalities we may refer to Pond on Public Utilities, sec. 93; *Richmond etc. R. R. Co.,* v. *Richmond,* 96 U. S. 521, [24 L. Ed. 734]; *In re Montgomery,* 163 Cal. 457, [Ann. Cas. 1914A, 130, 125 Pac. 1070]; Elliott on Roads and Streets, secs. 84, 85; *In re Junqua,* 10 Cal. App. 602, [103 Pac. 159]; *In re San Chung,* 11 Cal. App. 511, 517, [105 Pac. 609]; *In re Ackerman,* 6 Cal. App. 5, 9, [91 Pac. 429]; *Town of St. Helena* v. *San Francisco etc. Ry.,* 24 Cal. App. 71, [140 Pac. 600, 605]; *County of Plumas* v. *Wheeler,* 149 Cal. 758, 762, [87 Pac. 909]. It is probably sufficient to quote, of the above, from the Junqua case, as follows:

"That the police power is an inherent attribute of every state or commonwealth in the Union is a proposition which will readily be conceded. It is not only a power which inheres in the sovereignty of the states, but is a power, the exercise of which by the states is indispensably essential to the health, peace, comfort and welfare generally of the inhabitants thereof. In this state the people themselves, by their constitution, have asserted this power, and have thus expressly conferred its exercise upon all counties, cities, towns and townships within the state. (Art. XI, sec. 11.) . . . The only limitation upon the exercise of this power prescribed by the constitution is that the regulations so made shall not conflict with general laws. This power embraces the right to regulate any class of business, the operation of which, unless regulated, may, in the judgment of the appropriate local authority, interfere with the rights of others. . . In other words, the proposition cannot be maintained that the exercise of this power is confined to the regulation only of such interferences with the public welfare and comfort as come strictly within the common-law definition of a 'nuisance.'

"The legislature has expressly conferred upon the legislative authority of the city of Sacramento the power 'to determine what are nuisances, and to prevent the same,' and the right to so delegate such authority is within the legislative power of the state. But legislation, either local or general, which, when enacted under the pretext that it represents the exercise of the police power, is shown to be oppressive, thus imposing unnecessary or unreasonably burdensome conditions and restrictions upon and against that class

upon which it is designed to directly operate, will not be sustained. . . . The determination of the legislature as to what is a proper exercise of its police powers is not final or conclusive, but is subject to supervision by the courts. . . . 'Nor will they (the courts), in any event, interfere, except where the case be plain that needless oppression is worked and constitutional rights are invaded. . . . As it must happen in the case of many of these ordinances that the unreasonableness and oppression is not apparent upon the face thereof, evidence in such cases will be admitted to show the existing conditions.' (*In re Smith*, 143 Cal. 368, [77 Pac. 180].) . . . Whether it is impracticable to so control as to prevent soot emanating from such oil, when used as fuel, from escaping from a chimney or smokestack, or the effect of the regulation, as enforced, will be to prevent the use altogether of such oil as fuel, we cannot say from the face of the ordinance itself . . . We must assume, from the fact of the passage of the ordinance and in the absence of evidence showing the contrary, that the governing board of the city of Sacramento has held that it has" a deleterious effect, "after (presumptively) an investigation of the facts. . . . The subject-matter of the ordinance before us is within the jurisdiction of the legislative authority of the city of Sacramento."

It is well to note that the police power is assured by an express provision of the constitution, as follows: "Art. XI sec. 11. Any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with the general laws."

That the sprinkling of the streets so as effectually to lay the dust is demanded by considerations of health and comfort, of course will not be gainsaid, and that the burden of such remedial measure should be imposed upon the agency producing the inconvenience, discomfort, and menace to the health of the community would seem to be a just and equitable regulation and discrimination. And it may be remarked, in this connection, that this view is taken by the authorities which have been called to our attention by respondents.

In Elliott on Railroads, section 1082, it is said: "A municipal corporation cannot by contract surrender or alienate its governmental or police powers which the public welfare demands it should exercise. All rights granted to a municipality or contracts made by it with reference to the use of

28 Cal. App.—27

the streets are subject to its exercise of its police power, and a railroad company which secures the right to use the streets of a city takes such right subject to all reasonable regulations and ordinances enacted by the city in the exercise of its police power. Thus it has been held that a municipality may enact and enforce an ordinance requiring a street-railway company to keep down the dust by sprinkling the tracks.'' (See, also, Tiedeman on Limitations of Police Power, sec. 194; Dillon on Municipal Corporations, 5th ed., sec. 1276; Elliott on Roads and Streets, sec. 958; Nellis on Street Railways, sec. 157; McQuillan on Municipal Corporations, sec. 3774; 2 Wilcox on Municipal Franchises, p. 691.)

In *State ex. rel. Milwaukee v. Milwaukee E. R. & L. Co.*, 144 Wis. 386, [140 Am. St. Rep. 1025, 129 N. W. 623], an ordinance similar to the one under consideration was involved. It required all street railway companies to sprinkle with water the entire roadbed of the railways operated, between single tracks and double tracks and one foot outside of all tracks, as well as the space between double tracks. The sprinkling was to be done between April 1 and November 1 and the entire expense was to be borne by the street railway companies, except that the city was to furnish water free of charge. The defendant refused to comply with the ordinance and the rules adopted in pursuance thereof, and the city commenced a *mandamus* proceeding to compel the defendant to comply with the terms of the ordinance. The respondent contended that the city had no authority to pass such an ordinance. The city justified on three grounds: 1. A provision in its charter authorizing it to provide for the sprinkling of streets; 2. Broad police powers conferred on it empowering it to pass legislation abating nuisances and conserving the public health; 3. A statute of 1898. The court said:

''Ordinances requiring street-railway companies to sprinkle the streets immediately adjacent to their tracks have been held valid by a number of courts. (*City & S. Ry. Co. v. Mayor, etc., of Savannah*, 77 Ga. 731, [4 Am. St. Rep. 106]; *State v. Canal & C. R. Co.*, 50 La. Ann. 1189, [56 L. R. A. 287, 24 South, 265]; *Newcomb v. Norfolk W. St. Ry. Co.*, 179 Mass. 449, [61 N. E. 42]; *Chicago v. Chicago U. T. Co.*, 199 Ill. 259, [59 L. R. A. 666, 65 N. E. 243].) No decisions to the contrary have been cited and we have found none. Only

in a case which is clear beyond a reasonable doubt will the courts declare laws void which are adopted under the police power in the interest of the public health. The validity of a city ordinance is tested by the same rule. (Citing cases.) We entertain no doubt that the power existed to pass an ordinance of the general character of the one adopted, provided such power was exercised in a proper manner." After considering the question of the reasonableness of the ordinance, the court proceeded: "It is next claimed that the ordinance is void because it is discriminatory. . . . In the matter of stirring up dust and setting it in motion, street-car lines easily fall into a class by themselves. Their cars are large and heavy and run at a high rate of speed and with great frequency. The bodies of such cars rest close to the surface of the street. They occupy a very considerable of the best portion of the streets to the exclusion of the general public a large part of the time. They run on tracks which create peculiar conditions for the accumulation of dust and dirt, and they occupy the streets by permission from the common council and not as a matter of absolute right. No other agency stands on the same footing with the street-cars in the matter of raising dust. . . . Of course, many different kinds of vehicles occupy the streets and all stir up more or less dust when the necessary conditions exist, but it does not follow that because all are not called upon to contribute all must escape. This would entirely exclude the idea of classification. The purpose of this law is to provide for the sprinkling of a well defined portion of the public streets of the city. The appellant has, under the franchise granted to it, a paramount right to use and occupy this particular part of the street. In so doing, it is largely responsible for setting in motion the dust that arises therefrom and falls within a class by itself."

In the case above cited, *State* v. *Canal & C. R. Co.*, 50 La. Ann. 1189, [24 South. 265], also found in 56 L. R. A. 287, the supreme court of Louisiana said: "Of course, it is idle for the council to attempt to coerce those corporations to so operate their cars as to create no dust. That would be a physical impossibility. Hence, the city council has attempted to do the only thing which, in our opinion, it was possible for them to have done; that is, to pass an ordinance requiring them 'to water their tracks so as to effectually keep

the dust laid on same.' On reason and authority, we are of opinion the ordinance of the city council of the city of New Orleans must be sustained as a legal exercise of the police power, and as neither indefinite nor unreasonable.'' (See *Chester* v. *Chester Trac. Co.*, 5 Pa. Dist. Reps. 609; *City of St. Paul* v. *Haughbro*, 93 Minn. 59, [106 Am. St. Rep. 427, 2 Ann. Cas. 580, 66 L. R. A. 441, 100 N. W. 470]; *City of St. Paul* v. *St. Paul City R. Co.*, 114 Minn. 250, [Ann. Cas. 1912B, 1136, 36 L. R. A. (N. S.) 235, 130 N. W. 1108]; *Pittsburgh etc. R. Co.* v. *Birmingham*, 51 Pa. 41; *Mayor of City of Baltimore* v. *Baltimore Trust & Guarantee Co.*, 166 U. S. 673, [41 L. Ed. 1160, 17 Sup. Ct. Rep. 696].)

As a matter of some importance and bearing upon the question, and as evidence of a general affirmation of such police power, we may also refer to the fact that many cities have recognized this as the rule and have adopted ordinances in accordance therewith. For instance, the city of Chicago has the following ordinance:

''Every person or corporation operating or maintaining street railway tracks located in and along the different streets within the city, shall, except as otherwise expressly provided in the respective ordinances under which tracks have heretofore been or may hereafter be authorized to be laid, when ordered so to do by the commissioner of public works, keep moistened and well sprinkled with water in a manner satisfactory to the commissioner of public works the several streets upon and along which they, or either of them, may operate or maintain his or its respective tracks.

''Every person violating any of the provisions of this section shall be fined not less than twenty-five dollars nor more than one hundred dollars for each offense, and a separate and distinct offense shall be deemed to have been committed each and every day on which said person or corporation shall neglect, fail, or refuse to comply with any of the provisions of this section.''

An ordinance of Memphis and an ordinance of St. Louis are to the same effect.

We think that it would be going a long way toward unjustifiable interference with that discretion in such matters committed by the constitution to the various municipalities of the state if we should hold that this ordinance upon its face bears the proof of unreasonableness and injustice. The truth

is, of course, as we have seen, that the presumptions are in its favor. We must assume, in the absence of a showing to the contrary, that it is a reasonable requisite to promote the comfort and health of the community and that the particular injury complained of is caused entirely by the acts of petitioner. We may go further and declare the assumption that the ordinance will be given a reasonable construction and application so as to embarrass and burden as little as possible this corporation, engaged as it is in an important public service. We cannot hold that petitioner will or may be required under this ordinance to water the streets from curb to curb. The object is effectually to lay the dust that would otherwise be disturbed and disseminated by the operation of petitioner's cars. This could probably be accomplished by sprinkling the track and one or two feet on the outside and by means of the operation of the sprinkler along the rails. At least, we may so assume in the face of the record before us. Nor need petitioner be apprehensive that it will be mulcted in damages for a slight disturbance of the dust.

All that any just and reasonable court would require is that an effort be made in good faith to comply with the terms of said ordinance, and we venture to assert that the difficulty and expense incident to the fair operation and execution of said ordinance have been greatly exaggerated by petitioner. It must be assumed that there is no desire on the part of the city officials wantonly to embarrass petitioner and that a reasonable attitude of acquiescence toward a just policy for the promotion of the public health, safety, and comfort will enure to the benefit of petitioner as well as to the community generally.

We entertain no doubt that petitioner has failed to make a sufficient showing to justify us in holding said ordinance invalid, and the order to show cause is discharged and the writ denied.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 26, 1915.