STATE EX REL. ROSENHEIN vs. FREAR, Secretary of State, and another.

*February 22—February 24, 1909.*

*Supreme court: Original jurisdiction: Taxpayer's action: Restrain-*
*ing illegal disbursement of state moneys: Constitutionality of*
*statute, when not determined: Powers of state legislature: In-*
*vestigations: Incurring of expenses: Creating "debt:" Public*
*purpose: Judicial tribunal: Primary election law.*

1. The supreme court, in the exercise of its original jurisdiction,
   may entertain an equitable action to prevent the secretary of
   state and state treasurer from disbursing state moneys for
   illegitimate purposes; and such action may be initiated by a
   taxpayer if the attorney general refuses to act.
2. The constitutionality of a legislative act will not be considered
   by the court unless a decision in respect thereto is essential
   to the determination of some controversy calling for judicial
   solution.
3. The legislature has a broad discretionary power to investigate
   any subject as to which it desires information in aid of the
   proper performance of its legislative function or of any other
   act delegated to it by the fundamental law, state or national;
   and to that end may proceed by a duly authorized committee
   of one or both houses, and may incur reasonably necessary ex-
   penses, payable out of the public funds.
4. The workings of the primary election law for the selection of
   party candidates for the office of United States senator, includ-
   ing the conduct, legitimate or illegitimate, of persons voted for
   or voting at such election, as bearing on the policy of retaining
   or amending the law or the advisory force of its result in the
   given case, is a proper subject for legislative inquiry, whether
   the law is valid or not.
[5. Whether the primary election law (secs. 11—1 to 11—28, Stats.)
   so affects the discretion of members of the legislature, under
   the federal constitution, respecting the election of United
   States senators as to be invalid, and whether it infringes the
   right of public assembly and consultation for the public good,
   guaranteed by sec. 4, art. I, of the state constitution, not de-
   termined.]
6. A legislative inquiry broad enough to embrace the policy of pri-
   mary election laws in general cannot be regarded as a mere
   attempt to administer a void law, even though the particular
   statute whose workings are to be investigated may be void.

7. A resolution providing for a legislative investigation in aid of ordinary legislative business does not create a "debt" within the meaning of sec. 8, art. VIII, Const., relating to the passage of any law creating a state debt.

8. A statute providing that the expense accounts of a legislative investigation shall be audited by the secretary of state upon the certificate of the chairman of the investigating committee stating the facts, does not confer any auditing authority upon such chairman or violate sec. 2, art. VI, Const., making the secretary of state the state auditor.

9. A legislative investigation instituted for the purpose of securing information for legislative guidance is within the domain of public purpose and general interest, as distinguished from private purpose and from a mere political party purpose and interest, even though it may have political aspects and be dominated by members of one political party.

10. A legislative investigating committee charged with the duty of gathering and reporting information for legislative guidance is not a judicial tribunal within the meaning of sec. 2, art. VII, Const.

PETITION by a taxpayer to commence an action in this court for the purpose of preventing payment of expenses out of the state treasury incurred, or that may be incurred, by a joint committee of the legislature, under a resolution clothing such committee with authority to investigate the manner in which the primary election of party candidates for the office of United States senator to be chosen by the legislature of 1909 was conducted, and any alleged improper conduct of candidates voted for at such election, and to report the evi• dence taken and the committee findings. The application was heard on the relator's petition and the proposed bill of complaint, and upon notice to the secretary of state, the state treasurer, and the attorney general, and the matter was presented at the bar of the court by C. F. Lamb and Hon. J. Elmer Lehr, attorneys for the relator, and the deputy attorney general for the defendants.

In addition to the matters, in due form pleaded, showing legal capacity to sue and jurisdiction to entertain the case,

conditioned upon grounds sufficient to warrant the relief prayed for appearing in the bill, the following claims are appropriately set forth in such bill as satisfying the call for such grounds:

(1) The primary election law, as regards the nomination of party candidates for the office of United States senator, violates several clauses of the constitution of the United States, and particularly sec. 3, art. I, requiring United States senators to be elected by state legislatures, and that such primary election law, in its purpose and effect, takes from the state legislature the absolute discretion in respect to such elections lodged in the members thereof by the fundamental law.

(2) The resolution forming the sole basis for the proposed expenditures is void, because thereby it is proposed to incur state indebtedness in the administration of an unconstitutional primary election law.

(3) The said resolution is in contravention of the state constitution (sec. 8, art. VIII), in that it purports to create a state debt, and the question upon its passage was not taken by yeas and nays entered upon the journal of the assembly, and it does not appear that three fifths of the members elect of such assembly were present at the time the question was taken.

(4) The act to provide for payment of the proposed expenditures confers auditing power, as to the committee accounts, on the chairman of the committee, and requires the secretary of state to formally audit such accounts upon such chairman's certification of their correctness, contrary to sec. 2, art. VI, of the state constitution.

(5) The resolution attempts to authorize expenditure of public money for private purposes contrary to constitutional limitations in respect to that subject.

(6) The resolution purports to authorize expenditure of public money in support of an illegitimate judicial tribunal, contrary to sec. 2, art. VII, of the state constitution.

(7) If any reason ever existed for the proposed expendi-

ture of public money, it ceased to exist before the investigation was authorized.

(8) The resolution, in effect, calls for the use of public money for political party purposes.

(9) The primary election law violates sec. 4, art. I, of the state constitution, guaranteeing the right of public assembly and consultation for the public good.

*C. F. Lamb* and *J. E. Lehr,* for the relator.

*Russell Jackson,* deputy attorney general, for the respondent.

PER CURIAM. The foregoing covers all matters of any possible moment stated in the bill. The court takes the application for leave to use the original jurisdiction of the court, deciding the preliminary question of judicial power, and passing beyond that, further matters being regularly reached, to and deciding the question of propriety of granting the application, resting the result on the sufficiency of the bill in all respects as if it were challenged upon general demurrer.

The court is of the opinion:

*First.* If the secretary of state and state treasurer were about to take such action as to disburse state moneys for illegitimate purposes, it would be within the competency of this court, in the exercise of its original jurisdiction, to entertain an equitable action to prevent it on the initiative of a taxpayer, the attorney general refusing, on proper request, to act in the matter.

*Second.* Sound judicial policy precludes the court from considering the question of the constitutionality of a legislative act unless a decision respecting its validity is essential to the determination of some controversy calling for judicial solution.

*Third.* The legislature has very broad discretionary power to investigate any subject respecting which it may desire information in aid of the proper discharge of its function to

make or unmake written laws, or perform any other act delegated to it by the fundamental law, state or national, and to proceed, with that end in view, by a duly authorized committee of one or both branches of the legislature and to incur reasonably necessary expenses, payable out of the public funds.

*Fourth.* The workings of the primary election law for the selection of party candidates for the office of United States senator, including the conduct, legitimate or illegitimate, of persons voted for, or voting at such election, as bearing on the policy of retaining or amending such law or the advisory force of its result in the given case, is a proper subject for legislative inquiry independently of whether the law is valid or not. Such expenditure is not to be regarded as incurred in the administration of an unconstitutional law.

*Fifth.* The result of the second and fourth points in this opinion is that no emergency is now presented requiring the court to determine whether the primary election law so affects the absolute discretion conceded by counsel to have been lodged with the members of the legislature by the national constitution respecting the election of United States senators as to be invalid, and therefore the court leaves such question undetermined and without intending to cast any doubt whatever upon the validity of the law. The same is true as to whether the law infracts the right of public assembly and consultation for the public good guaranteed by sec. 4, art. I, of the state constitution.

*Sixth.* In any event, the resolution cannot be regarded as a mere attempt to administer a void law, because it is broad enough to cover the field of legislative inquiry respecting the policy of such laws, regardless of whether the particular one is valid or not.

*Seventh.* A legislative investigation duly authorized in the course and in aid of ordinary legislative business does not create a debt within the meaning of sec. 8, art. VIII, of the state constitution, requiring, upon the passage of any law cre-

ating a state debt, the question to be taken by yeas and nays, three fifths of all the members elected to the house in which the taking occurs being present, and the vote to be entered upon the journal. The term "debt" as used in such section refers to matters of the sort mentioned in the preceding sec. 6, not to mere ordinary legislative expenses.

*Eighth.* The act appropriating money to defray the expenses of the investigation does not violate sec. 2, art. VI, of the constitution, making the secretary of state the state auditor, because it requires the expense accounts to be audited as provided by sec. 127, Stats. (1898), which provides for the auditing of like expenses by the secretary on a certificate of the chairman of the committee of the facts to which the legislative fee bill is to be applied in the given case. No auditing authority, strictly so called, is thus conferred upon the chairman of the committee.

*Ninth.* The purpose of the investigation being to obtain information for legislative guidance, it is public, not private.

*Tenth.* A legislative investigating committee charged with the duty of gathering and reporting information for legislative guidance is not a judicial tribunal within the meaning of the constitution.

*Eleventh.* A legislative investigation, regularly instituted, for the purpose of securing information for legislative guidance, is within the domain of public purpose and general interest, as distinguished from a mere political party purpose and interest, though it may have political aspects and be dominated by members of one political party.

The foregoing covers all matters of moment suggested by the bill, and the result is that such bill does not state facts sufficient to constitute a cause of action for the interference sought, and therefore the application must be denied.

The application is denied.