# CASES DETERMINED

# January Term, 1910.

BENZ and another, Appellants, vs. KREMER and another, Respondents.

*February 1—February 22, 1910.*

*Injunction: Restraining enforcement of void criminal statute: Constitutional law: Police power: Public health: Regulation of bakeries.*

1. As a general rule, equity will not enjoin enforcement of the criminal law; but where property rights are being destroyed or threatened with destruction by action under a void ordinance or law, courts of equity will take jurisdiction to prevent the injury or destruction in a proper case, where the injured person would have no other adequate remedy.

2. In an action to enjoin enforcement of a criminal statute alleged to be unconstitutional, if the only provision thereof which affects plaintiff injuriously can stand as a valid enactment independent of the other provisions, such other provisions, whether constitutional or not, are immaterial in the action.

3. A reasonable police regulation is not invalid because property rights are to some extent affected by it.

4. It is for the legislature to determine in what cases and upon what conditions the police power may be exercised, and its determination will be deemed correct by the courts unless it appears to be clearly wrong; and the courts will also consider the ostensible purpose of a police regulation as its actual purpose unless the contrary clearly appears.

5. A police regulation which in general promotes the public health will not be held unreasonable or unnecessary merely because individual cases do not require its enforcement.

6. Sec. 1636—63, Stats. (Laws of 1907, ch. 486), providing that "no new bakery or confectionery establishment shall be established or operated in a room the floor of which is more than five feet below the level of the street, sidewalk or adjacent ground," is in the interest of the public health and is a reasonable and valid exercise of the police power.

MARSHALL, J., dissents.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.    *Affirmed.*

This action was brought by one *Nakielski,* owner, and one *Benz,* tenant, of a certain bakery building in the city of Milwaukee, against the defendant *Kremer,* as state bakery inspector, and *Beck,* commissioner of labor and industrial statistics, to restrain them from in any manner interfering with the plaintiffs in the use and enjoyment of the property in question and described in the complaint, and from interfering with the plaintiff *Benz* in conducting and carrying on a bakery business on the premises described, under a lease with the plaintiff *Nakielski,* and enjoining them from making complaint or arresting the plaintiff *Benz,* his agents or servants, for alleged violation of ch. 230, Laws of 1903, as amended by ch. 486 and ch. 530, Laws of 1907, and from prosecuting the action already commenced against said *Benz,* except to adjourn such prosecution from time to time until the termination of this action. The complaint is very voluminous and sets out in great detail many grounds upon which it is claimed that the law in question, above referred to and commonly known as the Bakery and Confectionery Law, is unconstitutional, therefore cannot be enforced. The complaint alleges that license was refused, after due application made therefor, on the ground that the bakery in question was established in a room the floor of which was more than five feet below the level of the street and sidewalk, and that this was the only objection to granting the license; that the bakery in question was constructed after the passage of the law prohibiting the floors in bakeries from being more than five feet below the level of the street; that arrests had been made on two occa-

sions before the commencement of this action for the sole reason that the floor in the plaintiff's bakery was more than five feet below the level of the street, and daily arrests were threatened thereafter if a change were not made so as to bring the floor into compliance with the law.

The defendants demurred to the complaint (1) for want of facts sufficient to constitute a cause of action; (2) for defect of parties plaintiff, in that the plaintiff *Nakielski* is improperly joined as plaintiff; and (3) that two separate and distinct causes of action have been improperly united. From an order of the circuit court sustaining the demurrer this appeal was taken.

*Moritz Wittig,* for the appellants.

For the respondents there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

*Henry E. Foelske,* appearing as *amicus curiæ.*

The following opinion was filed February 22, 1910:

KERWIN, J. While the complaint avers in great detail numerous grounds upon which it is claimed the law attacked is unconstitutional and void, the scope of investigation here is greatly narrowed by particular allegations. The only ground for refusal of license in this case, hence prosecution for carrying on the bakery business on the premises in question, as appears from the complaint, is that the plaintiff's bakery was constructed after passage of the law requiring the floor to be not more than five feet below the level of the street, and that the plaintiffs violated the law by constructing the bakery with the floor more than five feet below. No claim is made that the plaintiffs have in any other way violated the law, or that any prosecution is threatened or has been or will be maintained for any other cause.

It is a general rule that a court of equity will not take jurisdiction to enjoin enforcement of the criminal law. But there are some exceptions to this general rule, and it has been

held that, where property rights are being destroyed or threatened with destruction by action under a void ordinance or law, courts of equity will take jurisdiction to prevent the injury or destruction in a proper case.    *Joseph Schlitz B. Co. v. Superior,* 117 Wis. 297, 93 N. W. 1120; *Milwaukee E. R. & L. Co. v. Bradley,* 108 Wis. 467, 84 N. W. 870; *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441; *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885.    And in a proper case courts of equity will enjoin enforcement of an unconstitutional law.    *Bonnett v. Vallier, supra; Ex parte Young, supra.*    Courts of equity, however, will not take jurisdiction to enjoin the enforcement of an unconstitutional law at the suit of one who does not show himself injured by it.    *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 442, 87 N. W. 561; *Strange v. Oconto L. Co.* 136 Wis. 516, 524, 117 N. W. 1023; *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 123 N. W. 785; *State ex rel. Rosenhein v. Frear,* 138 Wis. 173, 119 N. W. 894; *Jones v. Black,* 48 Ala. 540, 542; *Kansas City v. U. P. R. Co.* 59 Kan. 427, 53 Pac. 468; *Franklin Co. v. State ex rel. Patton,* 24 Fla. 55, 58, 3 South. 471; *McGinness v. Davis,* 7 Idaho, 665, 65 Pac. 364; *Gibbs v. Green,* 54 Miss. 592, 608.    The foregoing cases very clearly illustrate the principle.    In *Wadhams Oil Co. v. Tracy, supra,* the action was brought to enjoin execution of ch. 363, Laws of 1909, upon the ground that it was unconstitutional.    At page 155 of 141 Wis. (123 N. W. 787) this court said:

"Doubtless when an enactment is wholly, or in greater part, unconstitutional, or in such part void that it is clear the person invoking equitable interference against persons assuming to have authority, as public officers, to enforce it, has no other way of adequately remedying the wrong, the doors of that ultimate resort should swing open freely.    But it will not do to make of the courts, by equitable interference, a sort of superior upper house to consider and pass, in general, and particular as well, upon legislative enactments, as the court is requested to do in this case.    If an enactment, in its general

scope and dominant particulars, is legitimate, as a general rule, equity jurisdiction for an attack upon the law should not be invokable to test mere minor features, but they should be left to their fate as cases arise specially involving them."

In *State ex rel. Rosenhein v. Frear,* 138 Wis. 173, 176, 119 N. W. 894, 895, it is said:

"Sound judicial policy precludes the court from considering the question of the constitutionality of a legislative act, unless a decision respecting its validity is essential to the determination of some controversy calling for judicial solution."

And in *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 442, 87 N. W. 561, and *Strange v. Oconto L. Co.* 136 Wis. 516, 524, 117 N. W. 1023, it is held that one cannot be heard to assail as unconstitutional a law which does not affect him injuriously. To the same effect are authorities in other states. In *Kansas City v. U. P. R. Co.* 59 Kan. 427, 53 Pac. 468, it is held that one cannot be heard to complain against a statute which discriminates between classes of persons in the imposition of burdens as being a denial of the equal protection of the laws, unless he belongs to one of the classes discriminated against. In *Gibbs v. Green,* 54 Miss. 592, 612, the doctrine is thus stated:

"Neither an executive nor a ministerial officer can be enjoined generally from putting a law in force. *Mississippi v. Johnson,* 4 Wall. 475. The complainant who seeks an injunction must be able to specify some particular act, the performance of which will damnify him, and it is such act alone that he can restrain. This court has no power to examine an act of the legislature generally and declare it unconstitutional. The limit of our authority in this respect is to disregard as in violation of the constitution any act or part of an act which stands in the way of the legal rights of a suitor before us; but a suitor who calls upon a court of chancery to arrest the performance of a duty imposed by the legislature upon a public officer must show conclusively, not only that the act about to be performed is unconstitutional, but also that it will inflict a direct injury upon him."

As appears from the allegations of the complaint, the only provision of the law attacked as unconstitutional which affects the plaintiffs injuriously is the following:

"Sec. 1636—63. After the passage of this act no new bakery or confectionery establishment shall be established or operated in a room the floor of which is more than five feet below the level of the street, sidewalk or adjacent ground. . . ." [Laws of 1907, ch. 486.]

If this provision can stand as a valid constitutional enactment independent of the others, then the others become wholly immaterial in this action, whether constitutional or not, under the authorities heretofore cited. That bakeries are within the field of regulation under the police power is unquestionable. This is not denied by counsel for appellants, as we understand their contention. But it is claimed that the law under consideration is an unreasonable invasion of property rights and falls within the condemnation of the rules of law as laid down in *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885, and other cases in this and other courts.

After all that has been said by this court in the numerous cases which have come before it in defining the police power and what is and what is not a reasonable exercise of it, it would seem unnecessary, if not useless, to attempt further discussion on the subject with a view of laying down general rules. Each case as it arises must turn upon its own particular facts under the rules of law laid down by the courts to the effect that when the legislation comes within the field of police regulation it will be sustained if within the bounds of reason, although to some extent property rights be affected. It would perhaps be difficult to imagine a police regulation which would not in some degree affect the property rights of persons coming within the field of the regulation. And the property of every person is held subject to the burden imposed by such reasonable regulation. *State v. Heinemann,* 80 Wis. 253, 49 N. W. 818; *State ex rel. Adams v. Burdge,* 95 Wis. 390, 398, 70 N. W. 347. All laws for the protection of

health, as well as for the quiet of the person and the security of property, fall within the general police power. *State ex rel. Adams v. Burdge, supra; State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137. The manifest purpose of the legislature in passing the five-foot-limit provision heretofore quoted was in the interest of health—a health regulation,—and as such we think it a valid exercise of the police power. In *State ex rel. Adams v. Burdge,* 95 Wis. 390, 398, 399, 70 N. W. 349, this court said:

"As the police power imposes restrictions and burdens upon the natural and private rights of individuals, it necessarily depends upon the law for its support; and, although of comprehensive and far-reaching character, it is subject to constitutional restrictions, and, in general, it is the province of the lawmaking power to determine in what cases or upon what conditions this power may be exercised."

And in *State v. Redmon,* 134 Wis. 89, 112, 114 N. W. 137, 142, the court said:

"The judgment of the legislature, of course, as to all of them is to be taken as correct, unless it appears to be clearly wrong, and also it is to be taken as true that its ostensible is its actual purpose, unless the contrary clearly appears."

That places where breadstuff for public consumption is prepared should be sanitary would not be questioned, nor that such places where sun and air are admitted would be much more so than basements so far below the surface of the ground as to practically, or in a large degree, exclude sunlight and an abundance of pure air, and thereby render the bakery less sanitary than if constructed not more than five feet below the level of the street. Obviously such a regulation could not be held unreasonable when its purpose and the effect of its observance would be to promote the production of wholesome food. But it is said that the plaintiff's bakery, though more than five feet below the surface of the ground, is still as sani-

tary as any other, because of the physical condition of the location; hence that there is no necessity for enforcing the law in the instant case. But individual cases cannot determine the necessity of a general law on the subject, nor indeed rule the question of classification. The question is whether, in general, the public health will be promoted by the rule, and not whether isolated cases do not need such a rule. If the rule be in the interest of the public health it must be general and all within the class controlled by it. *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 442, 87 N. W. 561; *State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Tenement House Dept. v. Moeschen,* 179 N. Y. 325, 72 N. E. 231. In dealing with the subject under consideration this court in *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 438, 439, 87 N. W. 564, said:

"The reasons for a given statute are for the legislature, if there are any which can fairly have weight. They are not for the courts. The latter have no control over the validity of a law, unless they can say with substantial certainty that no argument or consideration of public policy exists which could have weight with any reasonable and honest man. If any such argument or reason can be suggested, its weight or sufficiency is not debatable in the courts. The existence of legitimate and adequate reasons for any law should not lightly be denied. Human minds differ, and what may seem inadequate or irrelevant to one may seem cogent to another. One is not justified, therefore, in assuming that all who differ from him are unreasonable or are not acting in good faith. It is from such considerations as these that the courts have laid down for themselves the rule that only in a clear case—clear beyond reasonable doubt—will they venture to assert that a law is without reason to support either its purpose or the classifications it may make."

The five-foot clause of the law was considered by this court in the late case of *State ex rel. Ohlenforst v. Beck,* 139 Wis. 37, 119 N. W. 300, and, while the opinion is not direct authority upon the point involved here, it at least recognizes the

right of the legislature to impose such regulation.   The five-foot provision must of course be a reasonable regulation in the light of the authorities cited.   The appellants rely largely upon *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885; and *Lochner v. New York,* 198 U. S. 45, 25 Sup. Ct. 539.   But these cases are not controlling here.   In *Bonnett v. Vallier, supra,* the regulations imposed, as well as the penalty, were unreasonable, drastic, and destructive of property rights, as will be seen by an examination of the opinion.   In *State v. Redmon, supra,* the act was an unreasonable invasion of property rights by attempting to give the occupant of a lower berth in a sleeping car control of the upper berth, thereby depriving the owner of the use and enjoyment of his property without compensation, not in the interest of the public, but of the occupant of the lower berth.   And in *Lochner v. New York, supra,* the main question upon which the case turned was the right of liberty to contract respecting the hours of labor; that a law limiting the hours of labor could not be justified as a health law to safeguard the public health, or the health of the individual following the occupation of a baker.

Other provisions of the law are exhaustively discussed and claimed to be unconstitutional by counsel for appellants; but we need not consider them and do not decide whether valid or not because they do not injuriously affect the appellants here.

We are convinced that the provision for the violation of which prosecutions have been commenced and are threatened is a reasonable and valid exercise of the police power, and therefore the complaint states no cause of action.

*By the Court.*—The order appealed from is affirmed.

The following opinion was filed March 1, 1910:

Marshall, J. (*dissenting*).   With general principles as I understand them to be stated in the opinion of the court, I do not dissent.   Such principles have been so many times defi-

nitely proclaimed, that they need not be rediscussed.   Probably when stated concisely, omitting discussion, where necessary to be invoked, danger of that confusion in which constitutional law has sometimes been involved again being created, would be minimized or avoided altogether, leaving only opportunity for divergence of views as to whether a given situation falls within or without them.

I understand the first principle at the threshold of this litigation is one of jurisdiction and is this: Where there is an attempt by an administrative officer to enforce an unconstitutional law, it is within the competency of a court of equity, at the suit of one who would, if the enforcement were permitted, be permanently injured and be without any other adequate remedy therefor, to enjoin such enforcement.

The next rule also appertains to jurisdiction in the broad sense of whether a court of equity ought to act in the particular class of situations represented though having the power to act.   In that respect it has been declared as a rule of judicial policy, that where a legislative police regulation is legitimate as regards its dominant features and the infirmity appertains to a minor or inconsequential detail, the party claiming to be injured should, as a rule, be left to such remedy as he may have at law, that, of course, admitting of exceptions to fit extraordinary situations.

The next principle is this: If a law contains several features which are separable, one or more being constitutional and one or more not, and he who invokes equity jurisdiction to enjoin its enforcement only complains of threatened injury under the former, he cannot have relief, notwithstanding existence of the latter void provisions; but if the provision of which he complains would be valid by itself, but is merely compensatory to or is so united with the other provisions which are void that all constitute one inseparable enactment, then he may have the use of equity power, as sought here, to condemn the entirety.

The next principle is this: Every legislative regulation, ostensibly within the police power which goes beyond a reasonable regulation of any inherent right, is unconstitutional, not merely because it is unreasonable but because being so it violates some express provision of the fundamental law or its general purpose and spirit as to the security of life, liberty, and the pursuit of happiness.

Under those principles, if the law in question as to prohibiting bakeshops in basement stories of buildings where the floor is more than five feet below the level of the street, that being the only feature which affects appellants, is an unreasonable regulation of property rights and is a mere minor feature of the entirety, and is separable from the others, then one or more of such other features may be unconstitutional and yet equity should not give appellants relief. But if the particular feature is not minor in character or is a part of an inseparable entirety, then equitable interference may properly be invoked.

My brethren expressly, or inferentially, resolve the jurisdictional proposition as to matters of fact in favor of the respondents and so, necessarily, came to the conclusion from which I dissent.

To my mind, the proposition as to whether the prohibition of the use of basement stories of buildings is destructive instead of merely regulative of property rights, should be decided in favor of appellants. I cannot see any distinction between the situation here and the one in *Bonnett v. Vallier*, 136 Wis. 193, 116 N. W. 885.

My brethren concede that if the case in hand falls within the principles of the *Bonnett Case*, appellants should prevail, but fail to point out where it does not. It is said: "Each case as it arises must turn upon its own particular facts under the rules of law laid down by the courts," etc. Certainly it was not intended there to hold that principles change according to the shifting nature of facts, but only that whether any partic-

ular situation falls within or without the scope of certain principles depends upon its particular facts. Not that there can be any arbitrary location of a particular situation within or without the scope of the principles held to rule as to some other, but that its status in that regard must be determined logically. The court cannot properly say that one police regulation, made ostensibly in the interest of public health, unreasonably interferes with property rights and that another of the same general character, which interferes with property rights to the same extent, is reasonable, and so regulative instead of destructive.

In this case the court suggests that the law in question is a health regulation and makes such suggestion in a way to leave it inferable that the one in *Bonnett v. Vallier, supra,* was not, and for that reason that the decision in that case is not a precedent bearing on this one. The fact is the regulation in the *Bonnett Case* was a health regulation pure and simple. There is no way to distinguish the cases on that score. The one deprived the plaintiff of the use of a valuable part of his lot for building purposes, thereby taking away a part of his property, and likewise affected all other persons throughout the state similarly situated; the other deprives appellants from using a valuable part of their building for a legitimate business, thereby taking away a part of their property rights. In the one case it was not doubted but that the regulation, so called, was made in the interest of public health, and that, probably, public health would thereby be promoted, while here no greater claims are made. In the former it was not doubted but that public health of residents of tenement houses could be reasonably conserved without any such deprivation of property rights as was attempted, and here the situation is the same. So the court now in suggesting that the act in question is a health regulation, states, in my judgment, no distinction whatever between the two situations, but leaves it to be inferred, it seems, by one not familiar with the *Bonnett*

*Case* that the mere suggestion of the purpose of the law here is sufficient to differentiate the two cases.

The foregoing leaves nothing further that need be said to indicate a sufficient reason for holding that the feature of the law in question of which appellants complain, is void, and that the doors of equity should swing open to afford them protection against violation of their constitutional rights, since it must be obvious that such feature is a dominant, or at least a major, one as distinguished from a minor one.

I observe the court quotes at length with distinct affirmance, the rule recently proclaimed in *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 123 N. W. 785, as regards equity jurisdiction not being invokable to prevent a party from being injured by a mere void detail of a legislative police regulation, the enactment as to its general scope and dominant features being legitimate; but I do not find it decided expressly, if at all, whether the act before us is in those respects legitimate, or whether the particular provision is of a major or minor character, or whether the law is or is not in such greater part as to dominate the whole, unconstitutional. Many citations of authorities from cases are given but no express application thereof seems to be made to the case in hand.

True, following the rule that if a law in its general scope and dominant particulars is good, it is suggested that the regulation of bakeshops is a proper subject of police authority, which is readily conceded. But certainly, the meaning of the rule quoted from *Wadhams Oil Co. v. Tracy, supra,* is not that if the subject of a legislative police regulation is legitimate, that will satisfy the call for legitimacy of general scope and dominating particulars. Not only the "end must be legitimate" but "the means must be appropriate to that end." The term "general scope" seems to have been used by the court as if it appertained to the subject of regulation, instead of that, in connection with the manner and extent of interference. If that were the rule, in no case where the subject

is a proper one for police interference would equity take hold, though the manner and extent of the regulation might be such as to violate every fundamental principle of constitutional freedom.

Perhaps it may be inferred, where there is silence, from the citations and quotations that the court holds that the manner and extent of the regulation here, in the sense of the general scope of the enactment and its dominant features, are legitimate and that the particular feature is constitutional, or if not, that it is minor in character and separable from the balance of the act, and so that the court should not, in any event, afford a remedy in the manner of approach adopted, with which, as indicated, I should dissent.

The only thing I read as definitely decided is covered by the closing lines of the decision, to the effect that the particular regulation is a reasonable exercise of police authority and so equity should not interfere even if all the balance of the enactment is unconstitutional.    It seems that could not well be unless such particular feature is separable from the entirety, so, logically, the court must be considered as holding that such particular feature is not inseparably connected with other major or dominant features which may possibly be void, and with that, as indicated, I dissent.

My brethren have no disposition to overrule anything decided in *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885, or cast any doubt upon it, but it seems that in the absence of any distinct decision, applying the authorities cited, as to whether the particular provision complained of is a dominant one, or a mere detail feature, and as to whether, if it be the latter, the law, otherwise, in the dominant or greater part thereof, as said in *Wadhams Oil Co. v. Tracy,* is unconstitutional, there is opportunity for bench and bar to get the idea that merely if the particular feature is a detail and does not by itself work unconstitutional injury to appellants they are remediless for the injury in fact.

It is probably not advisable for me at this time to go much further and demonstrate the, to my mind, obnoxious and controlling features of the law which would carry the particular one down as a part of an entirety, in any event. Generally speaking, it seems that the broad claim of appellants, which has not received consideration, has much, if not controlling, merit. The basic idea of the enactment, the one around which all others are clustered, is to declare, as a principle, that all bakeshops and employees therein and methods of manufacture, storage, and exposure of products for sale to consumers, shall be of the highest attainable standard having regard to the public health, and to delegate to a legislative agent the duty of determining that status, making regulations to that end, and passing upon each individual case as to whether falling below or not, with drastic penalties for infractions; a power that could be easily used in such a way as to drive many worthy manufacturers out of business unless they saw fit to secure immunity in some improper way. In other words, instead of the legislation making regulations to carry out a legislative policy, leaving it to the legislative agent to make such minor rules as are classible as administrative merely, and to perform wholly within the field of administrative duties, the policy is declared and the legislative, judicial, as well as administrative, duties are vested in the legislative agent. It seems to be very much like a law, so called, declaring in effect the constitutional policy that the "property of no person shall be taken" for public use without just compensation therefor, and delegating to a legislative agent the duty of making regulations to effectuate such policy and to administer the same, passing upon violations so as to leave to courts the duty, only, of determining whether his commands have been obeyed or not, as a condition precedent to visiting upon the heads of alleged offenders prescribed severe punishments. The whole law seems to be as indicated. If that be the real character of the act, it would not be

claimed that the framework could stand the constitutional test, or that the framework falling the mere details would not fall with it.    That would condemn the particular feature, even if, by itself, it could be held legitimate to prohibit throughout the state, regardless of situations or conditions, the use of the basement story of any building for the ordinary business of running a bakeshop—as the learned attorney general very frankly confessed is the effect of such feature— notwithstanding it is, probably as a rule, entirely practicable to render such places reasonably suitable for such business.