386     SUPREME COURT OF WISCONSIN.     [JAN.

State ex rel. Milwaukee v. Milwaukee E. R. & L. Co. 144 Wis. 386.

STATE EX REL. CITY OF MILWAUKEE, Respondent, vs. MIL-
WAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appel-
lant.

*December 6, 1910—January 10, 1911.*

Mandamus: *When lies: Public and continuous duties: Moot questions:
Parties: Municipal corporations: Powers: Requiring street rail-
way companies to sprinkle streets: Ordinances: Repeal: Police
power: Reasonable regulations: Classification: Discrimination:
Enactment of ordinances creating liability: Vote and record.*

1. A city ordinance requiring a street railway company to sprinkle
the streets between and for a certain distance on either side of
its tracks imposes a duty which is public in its nature, the ob-
ject being to preserve the public health and promote its com-
fort, even though the city might, perhaps, have authority to
charge the whole or a part of the expense of sprinkling to abut-
ting owners. Such a duty may properly be enforced by *man-
damus.*

2. *Mandamus* will lie to enforce the performance of a continuous
legal duty.

3. Where a street railway company has disregarded for five years a
city ordinance requiring it to sprinkle streets and in a *manda-
mus* proceeding contests the right of the city to require it to do
any sprinkling at any time in the future, it cannot be held that
the proceeding presents only a moot question, although it does
not appear that the company does not intend to do the sprink-
ling in the future.

4. A city has such an interest in the sprinkling of its streets, both
from its interest in the public health and from the pecuniary
saving to it of the expense of sprinkling the street crossings, as
makes it a proper relator in such a *mandamus* proceeding, not-
withstanding abutting property owners may also be benefited
by being relieved of a burden which might otherwise be imposed
on them.

5. An ordinance of the city of Milwaukee, adopted in 1902, requiring
the sprinkling of streets by a street railway company, was in-
cluded in a general revision of the ordinances passed in 1906, but
the rules regulating such sprinkling, adopted under the ordi-
nance by the board of public works and approved by the com-
mon council, were not included in such revision. It was, how-
ever, expressly provided therein that all ordinances prescrib-
ing any rules, regulations, or restrictions upon street railway

companies were not repealed. *Held*, that this provision was sufficiently broad to save the rules if they became part of the ordinance, and, if they did not, then obviously they were not repealed.

6. An ordinance of the city of Milwaukee passed in 1902, requiring the sprinkling of streets by a street railway company, was not repealed by ch. 501, Laws of 1909, which provides that the common council of any city of the first class *may* cause its streets to be sprinkled during the current year and charge the cost thereof, with certain exceptions, to the abutting owners, and which is amendatory of existing charters only so far as they are inconsistent therewith and expires by limitation on December 31, 1910. The authority conferred by the latter act was only cumulative and supplementary to existing rights.

7. Repeals by implication are not favored, and where there are two affirmative statutes on the same subject one will not repeal the other if both can stand together.

8. An ordinance providing permanently for the sprinkling of streets by a street railway company was not repealed by a mere resolution of the common council, passed pursuant to ch. 501, Laws of 1909, during the pendency of an action against the street railway company to enforce performance of such duty, directing the board of public works to sprinkle such streets for a period of three and one-half months and charge the expense to the abutting owners.

9. Under sec. 1862, Stats. (1898), providing that street railway companies shall be "subject to such reasonable rules and regulations . . . as the proper municipal authorities may by ordinance, from time to time, prescribe," it is not necessary that the "regulations" referred to be passed when the right to use the streets is granted. The only limitation is that the regulations must be reasonable.

10. Only in a case which is clear beyond a reasonable doubt will the courts declare void an ordinance adopted under the police power in the interest of the public health.

11. An ordinance requiring a street railway company to sprinkle the parts of the streets immediately adjacent to their tracks is not unreasonable, provided the power is exercised in a proper manner.

12. Such an ordinance is not unreasonable because it requires the sprinkling to be done in such a manner as will keep the surface continually moist and prevent the dust from arising at all times each day when the work is done, "but not in such a manner as to create mud or pools of water." Reasonably interpreted, this

only means that the company must exercise ordinary care and caution in doing the work, not that the street must be entirely free from mud or from small pools of water.

13. Among the different users of the public streets, street railways are in a class by themselves, and an ordinance which requires them to sprinkle parts of the streets is not void as being discriminatory, although no such duty is imposed upon other users.

14. A provision of a city charter requiring an "aye" and "no" vote to be taken on all ordinances or resolutions for the appropriation or disbursement of money, or creating any liability or charge against the city, and that such vote be entered at length upon the journal, is mandatory, and in a case coming within its terms it is not sufficient that the facts can be ascertained from the clerk's original minutes.

15. The word "liability" as used in such city charter means something more than a mere undertaking on the part of the city which may involve no expense to it at all, such as a provision that a city owning and operating its own waterworks shall furnish water free for street sprinkling, and an ordinance containing such an undertaking does not require an "aye" and "no" vote.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

On July 14, 1902, the common council of the city of *Milwaukee* passed an ordinance requiring all street railway companies operating lines in the city to sprinkle with water the entire roadbed of the railways operated, between single tracks and double tracks and one foot outside of all tracks, as well as the space between double tracks, such work to be done under the general supervision of the board of public works and under rules and regulations adopted from time to time by said board and approved by the common council. Street railway companies were not required to do any sprinkling between November 1st and the 1st day of April following. The entire expense of such sprinkling was to be borne by the street railway companies, except that the city was to furnish the necessary water free of charge. The ordinance also provided that any violation thereof should be punished by a fine not exceeding $300 and costs.

No rules or regulations were adopted by the board of public works until July 10, 1905. Among other things, the rules adopted provided that the sprinkling called for by the ordinance should be done on all days from and including April 1st to November 1st in each year, excepting Sundays and legal holidays and such days as sprinkling was unnecessary by reason of rain or the moist condition of the streets; that sprinkling should be done in such manner and at such intervals as would keep the surface moist and prevent dust from arising between 6 a. m. and 7 p. m. upon each day when the work was required to be done, but not in such a manner as to create mud or pools of water, and that paved streets should be sprinkled lightly to meet the requirements, but graveled or macadamized streets should be thoroughly wetted down. The rules adopted by the board of public works were approved by the common council shortly thereafter. The defendant refused to comply with the ordinance and the rules adopted in pursuance thereof, and the city, on September 21, 1905, commenced a *mandamus* proceeding to compel the defendant to comply with the terms of the ordinance. From a judgment in relator's favor the defendant or respondent in the court below prosecutes this appeal.

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *J. B. Blake* and *Geo. P. Miller.*

For the respondent there was a brief by *Daniel W. Hoan,* city attorney, and *John J. Cook,* assistant city attorney, and oral argument by *Mr. Cook.*

BARNES, J. Nine distinct reasons are advanced by the appellant in support of its contention that the judgment appealed from should be reversed. These are: (1) *Mandamus* is not the proper remedy. (2) The city of *Milwaukee* is not the proper relator. (3) The rules adopted by the board of public works were not included in the 1906 revision of the

charter of the city of *Milwaukee* and were therefore repealed thereby. (4) Ch. 501, Laws of 1909, repealed the street-sprinkling ordinance. (5) The street-sprinkling ordinance became inoperative because of a resolution adopted by the city council acting under ch. 501, Laws of 1909. (6) The city had no power conferred on it to pass an ordinance requiring street railway companies to sprinkle any portion of the public streets. (7) The ordinance is void because its requirements are unreasonable. (8) It is void because it is discriminatory. (9) It was never lawfully passed.

1. It is argued that *mandamus* will lie only to enforce a clear legal duty, and that no such duty is shown to exist in this case; that the duty imposed is not a public one and therefore performance will not be enforced by *mandamus;* that *mandamus* will not lie to enforce the performance of a continuous act; and that it will not lie because the case presents a moot question only.

Whether a clear legal duty was imposed on the appellant by the ordinance involved depends on the solution of various legal questions that will hereafter be discussed.

We entertain no doubt that the duty attempted to be imposed is of a public nature. The mere fact that the whole or a portion of the expense of sprinkling might be charged to an abutting owner does not determine the nature of the duty. Public streets are built at the expense of abutting property owners where the cost does not exceed the resulting benefits, but the building of streets is none the less a public duty. Sidewalks are built and sewers are constructed in whole or in part at the expense of the abutting owner, regardless of special benefits. This is done by virtue of the police powers lodged in cities and villages, but the duty is as much a public one as if the cost had been defrayed by means of general taxation. It is somewhat difficult to see wherein any special benefit accrues to the abutting owner by reason of the street in front of his property being sprinkled. In any event the

public shares in the benefit. The ordinance was passed to preserve the public health and to promote its comfort, and manifestly such an ordinance operates in the interest of and for the benefit of the public.

Neither do we see any good reason for saying that relief should not be afforded by *mandamus* because the duty to sprinkle is a continuous one. If the legal duty on the part of the appellant is clear, the relator should not be denied an appropriate remedy because the right sought to be enforced is not of a temporary nature. There can be no more objection to a court of law granting permanent relief by *mandamus* in an appropriate action than there is to a court of equity granting relief in a proper case by a mandatory injunction. The cases of *State ex rel. Star Pub. Co. v. Associated Press,* 159 Mo. 410, 60 S. W. 91; *Diamond M. Co. v. Powers,* 51 Mich. 145, 16 N. W. 314; *State ex rel. Rosenfeld v. Einstein,* 46 N. J. Law, 479; and *People ex rel. Nat. C. Co. v. Dulaney,* 96 Ill. 503, cited by the appellant, are for the most part cases where under the established facts the right to the continuous or perpetual relief sought was not sufficiently clear to warrant the judgments prayed for. That *mandamus* will lie to enforce the performance of a continuous legal duty has been decided at least by inference by this court. *State ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72, 57 N. W. 970. Such is the general current of authority elsewhere. *Potwin Place v. Topeka R. Co.* 51 Kan. 609, 33 Pac. 309; *State ex rel. Bridgeton v. Bridgeton & M. T. Co.* 62 N. J. Law, 592, 43 Atl. 715; *Detroit v. Ft. W. & B. I. R. Co.* 95 Mich. 456, 54 N. W. 958; *Oklahoma City v. Oklahoma R. Co.* 20 Okla. 1, 93 Pac. 48; *State ex rel. Ellis v. Atlantic C. L. R. Co.* 48 Fla. 114, 40 South. 875.

The contention that the case presents only a moot question we do not take seriously. It is true that the appellant is not required by the ordinance to do any sprinkling between November 1st and April 1st, and appellant may conclude to

comply with its terms beginning April 1st next.    This ordinance, if valid, became operative more than five years ago and no sprinkling has been done thereunder as yet.    Furthermore, the appellant is in court vigorously contesting the right of the city to require it to do any sprinkling thereunder at any time in the future.    In view of the situation the city is entitled to have its rights under the ordinance judicially determined.

2. It is argued that the city has no financial interest in the result of the suit and that the only ones who have are the abutting owners who will be relieved of their burden by the enforcement of the ordinance, and that the city therefore is not a proper relator.    This argument seems to be based on the proposition that street sprinkling is a private matter which inures to the benefit of the abutting owner and which affects the public in an incidental way only.    We have already said that the duty imposed is a public one, and, while the cost may possibly be charged to the lotowner, a point we do not decide, yet the special benefit that accrues to his property may be very slight, if indeed any.    If we except ch. 501, Laws of 1909, which will be discussed later, there is no statute which compels or obligates or in express terms authorizes the city to impose on abutting property owners the burden of sprinkling. The city is authorized by its charter to provide for street sprinkling, and we see no objection to its providing that the expense thereof be met by general taxation.    It may be that the city would be restricted to this method of raising the necessary fund to defray the cost of the work.    Indeed, under the provisions of the 1909 law the city is directly and pecuniarily interested in requiring street-car companies to comply with the ordinance, because it must bear the expense of sprinkling the street crossings, which make up a very considerable fraction of the entire street surface in the city.    Besides, the ordinance we are considering purports to be passed in the interest of public health, and the trial court found as a matter of fact that the circulation of dust was injurious to

public health and that disease-breeding germs were carried therein. There is no difference in principle between the case at bar and *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534, 43 N. W. 489, where the court at the suit of the city compelled the railway company to restore a highway used by it to its former state of usefulness. In some respects the present case is stronger, in that it involves the matter of public health. Other cases holding that the city is a proper relator in such a case are: *State ex rel. Bridgeton v. Bridgeton & M. T. Co.* 62 N. J. Law, 592, 43 Atl. 715; *Chicago, B. & Q. R. Co. v. State ex rel. Omaha,* 47 Neb. 549, 66 N. W. 624; *State ex rel. Rutherford v. Hudson River T. Co.* 73 N. J. Law, 227, 63 Atl. 84; *Pleasantville v. Atlantic City & S. T. Co.* 75 N. J. Law, 279, 68 Atl. 60; *State ex rel. New Orleans v. N. O. & N. E. R. Co.* 42 La. Ann. 11, 7 South. 84; *Potwin Place v. Topeka R. Co.* 51 Kan. 609, 33 Pac. 309; *International W. Co. v. El Paso,* 51 Tex. Civ. App. 321, 112 S. W. 816.

3. In 1906 an ordinance was passed by the city of *Milwaukee* to revise, consolidate, and amend the general ordinances of the city. The ordinance requiring the appellant to sprinkle was included in the revision, but the rules adopted by the board of public works under said ordinance in 1905 were not included therein, and hence it is claimed that such rules were repealed by it. The rules adopted by the board of public works having been ratified and approved by the common council, they became to all intents and purposes part and parcel of the ordinance passed by the common council on July 14, 1902, and really make it complete. The revision does not in express terms purport to repeal the rules adopted and approved as stated, although they do not appear as part of the ordinance therein. But sec. 3 of ch. 30 of the revision expressly provides that all ordinances prescribing any rules, regulations, or restrictions upon street railway companies are not repealed. This provision we deem sufficiently broad to save the rules. If they did not become a part of the ordinance,

then obviously they were not repealed. The court found that the rules were not repealed by reason of the 1906 codification of the charter provisions, and no exception is taken to such finding, so the question is not really before the court.

4. Ch. 501, Laws of 1909, authorized the common council of any city of the first class to provide whether the streets of such city should be sprinkled during the current year, and to charge the cost thereof, with certain exceptions, to the abutting owners in case it decided to sprinkle. The act was made amendatory to existing charters only so far as they were inconsistent with the act, and it was provided that the law should expire by limitation on December 31, 1910. It is argued that this act repeals the ordinance under consideration.

The argument is not convincing. In the first place, the act provides that the common council *may* provide for street sprinkling. Then it recites that it modifies or repeals existing charter provisions only in so far as they are inconsistent therewith. Furthermore, the act has already expired by limitation, and if it should be construed to supersede all existing charter provisions relative to street sprinkling we would have neither a law nor an ordinance on the subject until one was passed. These considerations are strongly suggestive of a legislative intent to permit existing laws and ordinances on the subject to stand unless they were actually repugnant to the law in question. It is apparent that former laws which confer the power on cities of the first class to proceed in some other way are not inconsistent with the later act. The authority thereby conferred is merely cumulative and supplementary to existing rights. If there was a repeal of the ordinance in question it must have been by implication, as it was not repealed by any affirmative declaration contained in the 1909 law. Repeals by implication are not favored. The earlier act remains in force unless it is manifestly inconsistent with or repugnant to the later one, or unless some express notice is taken of the former act in the later one which

plainly indicates an intention to abrogate it. *State ex rel. M., T. & W. R. Co. v. Tomahawk Com. Council,* 96 Wis. 73, 71 N. W. 86. Where there are two affirmative statutes on the same subject, one will not repeal the other if both can stand together. *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425. The implication to be operative must be necessary, and if it arises out of two acts the later abrogates the older one only to the extent that it is inconsistent and irreconcilable with it. The two statutes will if possible be construed so as to stand together. 1 Lewis's Sutherland, Stat. Constr. (2d ed.) p. 465; Maxwell, Interp. of Stats. (4th ed.) 233; Black, Interp. of Laws, sec. 53. Other Wisconsin cases illustrating the foregoing rules of statutory construction are *Goodrich v. Milwaukee,* 24 Wis. 422; *Foster v. Hammond,* 37 Wis. 185; *Vorous v. Phenix Ins. Co.* 102 Wis. 76, 78 N. W. 162; *Bradley v. Cramer,* 61 Wis. 572, 21 N. W. 519; *First Nat. Bank v. Baker,* 68 Wis. 442, 32 N. W. 523; *Peterson v. Baker,* 68 Wis. 451, 32 N. W. 527. The exception, if such it may be called, is that where the legislature legislates on a given subject, and it is manifest that it intended to revise and codify all existing laws and to cover the entire subject, former acts dealing with such subject will be deemed to have been impliedly repealed although there is an absence of an express repealing clause. *Gymnastic Asso. v. Milwaukee,* 129 Wis. 429, 109 N. W. 109. No such purpose is apparent in ch. 501, Laws of 1909. In fact the intention appears to be quite to the contrary.

5. Acting under the power conferred by ch. 501, Laws of 1909, the common council of the city of *Milwaukee* on July 6, 1909, passed a resolution authorizing and directing the board of public works to sprinkle certain streets in the city until October 15, 1909, and to charge the expense of such sprinkling to the abutting owners. The resolution further provided that the cost of sprinkling streets at the intersection

thereof should be paid out of the street or alley fund. It is argued that this resolution had all the dignity, force, and effect of an ordinance; that it covered all streets upon which appellant maintained a street railroad, as well as the entire width of such streets; and that it operated to repeal the ordinance of July 14, 1902.

Too much is claimed for this resolution. The appellant refused to comply with the 1902 ordinance. This action was brought to compel it to do so and was pending in the courts. Until it was decided the city must either make some other provision for sprinkling or allow the portion covered by the 1902 ordinance to go unsprinkled. It would not have availed much to sprinkle the balance of the street. To meet the situation the city adopted a temporary expedient covering a period of less than three and one-half months. This was not intended to and in fact did not repeal the original ordinance, which made permanent provision for sprinkling that portion of the street occupied by the appellant.

6. The next contention is that there was no authority conferred on the city of *Milwaukee* to pass the ordinance in question. The city justifies its action on three grounds: (1) A provision in its charter authorizing it to provide for the sprinkling of streets; (2) broad police powers conferred on it empowering it to pass legislation abating nuisances and conserving the public health; (3) sec. 1862, Stats. (1898).

The statute referred to provides for the organization of corporations to construct, operate, and maintain street railway lines, and authorizes any municipal corporation to grant to such corporation, upon such terms as it deems proper, the right to use the streets and bridges within the limits of the municipality for laying tracks and running cars thereon. The statute then provides:

"Every such road shall be constructed upon the most approved plan *and be subject to such reasonable rules and regu-*

*lations* and the payment of such license fees as the proper municipal authorities may by ordinance, *from time to time,* prescribe."

This statute is as broad and comprehensive as language can well make it. The ordinance in controversy here is unques-tionably a regulation. The language quoted precludes the idea that the "regulations" referred to must be passed when the right to use the streets is granted, because they may be passed "from time to time." There is no apparent reason for saying that some particular kind of regulations were intended to be covered and that others were intended to be excluded. The only limitation or restriction which the law fixes is that the "regulations" must be *reasonable.* It is not seriously contended that it is beyond the power of the law-making body to require a street railway company to sprinkle the streets immediately adjacent to its tracks. The reasonableness of this particular regulation is attacked on two grounds, which will be considered later. Being satisfied that sec. 1862, Stats. (1898), conferred on the city the power to pass the ordinance, assuming it to be reasonable, it is unnecessary to consider the other acts urged by the city in support of its right to legislate as it did. We apprehend that if the ordinance is not a reasonable regulation it cannot be justified on any ground. Ordinances requiring street railway companies to sprinkle the streets immediately adjacent to their tracks have been held valid by a number of courts. *City & S. R. Co. v. Savannah,* 77 Ga. 731; *State v. C. & C. R. Co.* 50 La. Ann. 1189, 24 South. 265; *Newcomb v. Norfolk W. St. R. Co.* 179 Mass. 449, 61 N. E. 42; *Chicago v. Chicago U. T. Co.* 199 Ill. 259, 65 N. E. 243. No decisions to the contrary have been cited and we have found none. Only in a case which is clear beyond a reasonable doubt will the courts declare laws void which are adopted under the police power in the interest of the public health. *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561; *Bonnett v. Vallier,*

136 Wis. 193, 116 N. W. 885; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Benz v. Kremer,* 142 Wis. 1, 125 N. W. 99. The validity of a city ordinance is tested by the same rule. *Eastern Wis. R. & L. Co. v. Hackett,* 135 Wis. 464, 481, 115 N. W. 376, 1136, 1139; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036; *C. Beck Co. v. Milwaukee,* 139 Wis. 340, 120 N. W. 293. We entertain no doubt that the power existed to pass an ordinance of the general character of the one adopted, provided such power was exercised in a proper manner. The reasons which support and sustain the imposition of such a burden will be discussed under an assignment of error which raises the alleged discriminatory features of the ordinance.

7. Is the ordinance void because of unreasonableness? It is urged that, assuming the city had power to pass some kind of an ordinance requiring the appellant to sprinkle a portion of the public streets, such power was exercised in an unlawful manner, in that the rules adopted by the board of public works aim at an ideal rather than a practical result, and that such result can only be attained by the expenditure of an extravagant sum of money which it is not reasonable to require the appellant to expend. The obnoxious requirement is found in rule 3, which imposes on the appellant the duty of sprinkling the streets in such a manner as will keep the surface continually moist and prevent the dust from arising at all times each day when the work is done, "but not in such a manner as to create mud or pools of water." It is argued, and reasonably enough, that it may be well nigh impossible to so sprinkle streets that no dust will arise therefrom, and that it is impossible to sprinkle them in the usual and customary way and at the same time keep them entirely free from mud or even pools of water. But the rules must have a reasonable interpretation, and if they are susceptible of one that will make the ordinance valid it is to be preferred to one which will render it void. It is a matter of common knowl-

edge that streets frequently have depressions in them and that water will run down hill and will collect in these depressions and form little pools, until it seeps into the ground or evaporates. But we think it was not intended that the street railway company should guard against a thing of this kind, but rather to prevent such large quantities of water from being poured onto the streets at any one time as to create continuous pools of water therein. So, too, we all know that dust will accumulate on the streets and that when it becomes sufficiently thick it will turn to mud when saturated with water. But here again it is very evident that what the rules were intended to guard against was the excessive use of water at any one time or the creation of a permanent condition. This would seem apparent from rule 4, which provides that paved streets shall be sprinkled lightly, but "graveled or macadamized streets shall be thoroughly wetted down." The board of public works did not mean that certain streets should be thoroughly wetted down and at the same time that the laws of nature should be defied in so doing. The rules must be read and construed together and be given a reasonable interpretation; and so interpreted they mean that the appellant must exercise ordinary care and caution in doing the work of sprinkling.

8. It is next claimed that the ordinance is void because it is discriminatory. It is said that some streets are used by steam roads and that automobiles and teams are constantly using most of them, and that no good reason exists for singling out one user from the many and compelling it to bear an expense not imposed on other users, and that appellant is therefore being denied the equal protection of the laws.

The question involved is really one of classification. The essentials requisite to constitute legitimate classification have been laid down in a number of cases recently decided and it is unnecessary to reiterate them. They will be found in *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309,

120 N. W. 756; *Servonitz v. State,* 133 Wis. 231, 113 N. W. 277; *State v. Evans,* 130 Wis. 381, 110 N. W. 241; and *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561. In the matter of stirring up dust and setting it in motion, street-car lines easily fall into a class by themselves. Their cars are large and heavy and run at a high rate of speed and with great frequency. The bodies of such cars rest close to the surface of the street. They occupy a very considerable of the best portion of the streets to the exclusion of the general public a large part of the time. They run on tracks which create peculiar conditions for the accumulation of dust and dirt, and they occupy the streets by permission from the common council and not as a matter of absolute right. And finally, they are subjected by statute (sec. 1862, Stats. 1898) to reasonable rules and regulations. No other agency stands on the same footing with the street cars in the matter of raising dust. The steam roads occupy a small portion of a few unimportant streets in the outlying districts and cross over some others at grade, but their occupancy of the streets is almost negligible as compared with the street railway system. Of course many different kinds of vehicles occupy the streets and all stir up more or less dust when the necessary conditions exist, but it does not follow that because all are not called upon to contribute all must escape. This would entirely exclude the idea of classification. The purpose of this law is to provide for the sprinkling of a well defined portion of the public streets of the city. The appellant has, under the franchise granted to it, a paramount right to use and occupy this particular part of the street. In so doing it is largely responsible for setting in motion the dust that arises therefrom, and falls within a class by itself under the authorities cited.

9. Was the ordinance legally enacted? The city charter, sec. 2, ch. 4, provided that "on all questions, ordinances or resolutions for assessing and levying taxes, or for the appropriation or disbursement of money, or creating any liabilities

or charge against said city or any fund thereof, the vote shall be taken by ayes and noes; and every vote by ayes and noes shall be entered at length upon the journal." Sec. 4 of ch. 4 of the charter contains a provision substantially like that quoted. The roll call showed forty-two members of the common council present at the meeting at which the ordinance was passed. An "aye" and "no" vote was taken on the adoption of the ordinance. Forty-one members voted aye and none voted no. The clerk preserved the original minutes showing the names of the aldermen who voted on the ordinance and how they voted. The entry made on the journal, however, was to the effect that forty-one votes were cast in favor of the passage of the ordinance and none in opposition, without stating the names of those voting. Thus it became impossible to tell from the journal what members voted on the passage of the ordinance.

Sec. 5 of ch. 4 of the charter provided that all proposed ordinances should be referred to appropriate committees before their passage, and that if any report was made on any ordinance appropriating money out of or creating any charge against any fund, such report should be countersigned by the city comptroller, and that the report should not be countersigned unless there was a sufficient amount of money in the fund to meet the appropriation.

The ordinance in dispute provided that the city should furnish, free of charge to the street railway companies, the necessary water for sprinkling, and that the water so furnished should be chargeable to and payable out of the general fund of the city. The street railway companies were required to furnish to the board of public works on the 5th of each month a statement of the amount of water used during the preceding month.

The contention of the appellant is that the ordinance created a charge or liability against the city or some fund thereof, and that, the "aye" and "no" vote not having been

entered at length upon the journal, it was never legally passed.

Laws requiring the "aye" and "no" vote to be taken on certain questions and entered upon the permanent record of the common council of a city are generally held to be mandatory, and the requirement that the record be kept stands on no different footing from that relating to the manner of voting. *Steckert v. East Saginaw,* 22 Mich. 104; *Pickton v. Fargo,* 10 N. Dak. 469, 88 N. W. 90; *Cook v. Independence,* 133 Iowa, 582, 110 N. W. 1029; *Payne v. Ryan,* 79 Neb. 414, 112 N. W. 599; *Rich v. Chicago,* 59 Ill. 286; *Logansport v. Crockett,* 64 Ind. 319, 324; *Cutler v. Russellville,* 40 Ark. 105; *Sullivan v. Leadville,* 11 Colo. 483, 18 Pac. 736; 1 Dillon, Mun. Corp. (4th ed.) § 291. The reason for such enactments is that the people generally, and particularly the constituency of an alderman, are entitled to know how their representatives vote on important questions. In order that they may know, it is quite as important that the record of the vote be preserved as it is that it be taken in such a manner that it can be preserved. While it is possible in the present case to ascertain from the original minutes of the meeting who voted for the passage of this ordinance, it is not possible to do so from the journal, and this is the record which the law requires shall be complete. The only cases we have found which hold that a provision requiring the "aye" and "no" vote to be taken is directory are *Striker v. Kelly,* 7 Hill, 9, 29 (affirmed 2 Denio, 323), and *Elmendorf v. New York,* 25 Wend. 693. The reason which impelled the great majority of courts that have passed upon the question to hold such acts mandatory is quite convincing, and such a rule is apt to produce the best results in the administration of municipal affairs, and we adopt it without hesitancy.

It remains to be considered whether the ordinance created a debt or liability against the city or a charge on any fund thereof. Unless it did it was unnecessary that the "aye" and

"no" vote be taken or preserved.    This presents one of the most
serious questions in the case.    If it is important that the
"aye" and "no" vote shall be taken and preserved in the man-
ner the charter requires, it is just as important that it be
taken on all questions falling within the charter provisions.
The provisions, it is true, are broad and general, but liber-
ality in construction should not lean in the direction of un-
duly restricting the application of the statute.    That the or-
dinance does not create a "debt or a charge against any fund"
is clear enough, but that it does not create a "liability" is not
so clear.    If the term is used in its broadest and most com-
prehensive sense it would include any obligation which a
party was bound in law or justice to perform and is synony-
mous with responsibility.    In its more restricted and per-
haps in its popular sense it means that which one is under
obligation to pay to another.

The city owns its own water-works.    The object and pur-
pose of the ordinance is not to appropriate money or create
any indebtedness, but to require the appellant to sprinkle a
portion of the streets which it uses.    Incidentally it is pro-
vided that no charge shall be made for the water used in
sprinkling and which the city must pump into its mains.
The city may refuse or decline to permit the appellant to
draw water from its hydrants, but if it does the ordinance
automatically becomes inoperative.    No money is voted out
of the city treasury by the ordinance and no expense is con-
templated, except it be the fuel consumption in pumping the
extra water, and the wear and tear on the pumps in doing the
extra work.    It is not even certain that these items of expense
are real.    We are not advised as to whether or not the streets
were sprinkled before this ordinance was passed, but the fair
presumption is that they were; else there would be little war-
rant for sprinkling a strip in the center of the streets and neg-
lecting the rest of them.    If they were, we must also presume
that the city was furnishing water for such sprinkling and

was receiving no compensation therefor, unless we assume that the appellant was made a special object of bounty. The resolution of July 6, 1909, provided that the city should furnish water free of charge, which would indicate in some measure what its practice was. We mention these matters as indicating that there is no affirmative showing that the expense of the city would be at all increased by the passage of this ordinance. Indeed it may well be that it was relieved of a portion of the cost of sprinkling street crossings at least. We think the word "liability" as used in the charter means something other than a mere naked undertaking which may involve no expense to the city at all, and that it was intended to cover some claim or obligation which in the ordinary course of business should be presented to the council for audit and allowance, and which should upon allowance constitute a charge on some fund. Until the amount of expense, if any, incurred under this ordinance was either ascertained or estimated, there was no charge against any fund, and the expense could be ascertained and provided for after the ordinance was passed as well as at the time of its passage. We conclude that the judgment is right and should be affirmed.

*By the Court.*—Judgment affirmed.